**Ex parte David AUSTIN, Jr.**

No. 69930.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 24, 1988.

Colleen A. Dunbar, Dallas, for appellant.

Henry Wade, Former Dist. Atty. and Leslie McFarlane, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is a post-conviction application for writ of habeas corpus brought under the provisions of Article 11.07, V.A.C.C.P.

Applicant was indicted on June 10, 1985 for the attempted murder of "Richard Reason with a handgun, a deadly weapon." On May 9, 1986, applicant waived trial by jury and entered a plea of guilty before the court to the indictment. The court assessed the punishment at 10 years' confinement in the Department of Corrections. In the judgment the court made an affirmative finding as to the use of a handgun, a deadly weapon, during the commission of the offense. The judgment also reflects " * REVIEWED FOR SHOCK PROBATION AFTER 120 DAYS *."[1] The docket sheet contains a similar entry.

Applicant alleges the above described plea of guilty was entered as a part of a plea bargain agreement with the State and

---

1. See Article 42.12, § 3e(a), V.A.C.C.P., providing that after the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence begins the court may consider a motion for "shock probation."

approved by the court that he was to be granted shock probation pursuant to Article 42.12, § 3e, V.A.C.C.P. He further contends that the plea bargain agreement which induced his plea of guilty could not be fulfilled due to the affirmative finding of the use of a deadly weapon in the commission of the offense by the trial court and entered in the judgment;[2] that the trial court, prosecutor, defense counsel and applicant were unaware at the time that the plea bargain could not be carried out. He relies upon *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), as authority entitling him to relief.

In accordance with Article 11.07, supra, the habeas application was first filed in the convicting court. At the time of filing of the original habeas application in the trial court the 180 days in which the trial court retained jurisdiction to grant shock probation had not expired. No action was taken on the original application and an amended application was filed after the 180 day period had expired. Several months later the trial court adopted the State's proposed findings of fact and conclusions of law that applicant's guilty plea was made with the assurances that he would be released on shock probation, and that in attempting to fulfill this plea bargain it was discovered that applicant was not legally eligible for shock probation, and that since the plea was based on a promise which could not be fulfilled, the guilty plea was involuntary and that the applicant is entitled to have his plea withdrawn.

■■■ It is now axiomatic that when a defendant enters a plea of guilty or nolo contendere pursuant to a plea bargain agreement, the State is bound to carry out its side of the plea bargain or the plea itself is involuntary. *DeRusse v. State,* 579 S.W. 2d 224 (Tex.Cr.App.1979); *Ex parte Rogers,* 629 S.W.2d 741 (Tex.Cr.App.1982); *Ex parte Garcia,* 682 S.W.2d 581 (Tex.Cr.App. 1985); *Ex parte Perkins,* 706 S.W.2d 320 (Tex.Cr.App.1986). If the prosecution does not live up to its part of the plea bargain and such bargain was used as an inducement for the guilty plea, doubt is raised as to whether a guilty plea under such circumstance is truly voluntary. *Bass v. State,* 576 S.W.2d 400 (Tex.Cr.App.1979); *Rogers,* supra, at 742; *Ex parte Pruitt,* 689 S.W.2d 905 (Tex.Cr.App.1985). Further, when the court loses jurisdiction so as to bar enforcement of a plea bargain agreement, doubt is also raised as to whether a guilty plea under such circumstances can be regarded as truly voluntary. *Rogers,* supra, at 742. And where the provisions of the plea agreement or bargain later become unenforceable, the plea is involuntary. *Ex parte Huerta,* 692 S.W.2d 681 (Tex.Cr.App.1985). This is true even though the State or the court never did have the authority to ensure compliance with the plea bargain. Cf. *Ex parte Chandler,* 684 S.W.2d 700 (Tex. Cr.App.1985). The appropriate relief for failure to keep a plea bargain is either specific enforcement of the agreement or withdrawal of the plea, depending upon the circumstances of each case. *Joiner v. State,* 578 S.W.2d 739 (Tex.Cr.App.1979); *Shannon v. State,* 708 S.W.2d 850 (Tex.Cr. App.1986); *Ex parte Perkins,* supra.

■■■ In the instant case the trial court lost jurisdiction to grant shock probation after the 180 days as provided in Article 42.12, § 3e, V.A.C.C.P. See *Houlihan v. State,* 579 S.W.2d 213 (Tex.Cr.App.1979); *Ex parte Rogers,* supra, at 742. For this reason alone the applicant would be entitled to relief in light of the plea bargain regardless of whether the trial court had authority to grant shock probation or not in view of the affirmative finding of a deadly weapon. Applicant, however, does not claim the plea bargain was broken by the loss of jurisdiction, but contends the plea bargain was not carried out because the prosecutor and the court decided that shock probation could not legally be granted in light of the said affirmative finding. It is to this matter we turn our attention.

In 1985 the Legislature reorganized the statutes regulating probation, parole and executive clemency, etc., by amending Article 42.12, V.A.C.C.P., and by adding Article 42.18, V.A.C.C.P., and by repealing Article

---

**2.** Cf. said § 3e with § 3g(a)(2) of Article 42.12, supra.

42.13, V.A.C.C.P. (Acts 1985, 69th Leg., ch. 427, p. 2895, effective Sept. 1, 1985).

Under this reorganization we find that § 3e(a) of said Article 42.12 provides:

"Sec. 3e. (a) For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. *Probation may be granted under this section only if:*

"(1) *the defendant is otherwise eligible for probation under this article;* and

"(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony; and

"(3) the offense for which the defendant was convicted was other than those defined by Section 19.02, 20.04, 22.021, 22.03, 22.04(a)(1), (2), or (3), 29.03, 36.02, 38.07, 71.02 or a felony of the second degree under Section 38.10, Penal Code." (Emphasis supplied.)

Article 42.12, § 2, as amended in the 1985 reorganization of the statute reads:

"Sec. 2. This Article may be cited as the 'Adult Probation Law'.

"Unless the context otherwise requires, the following definitions shall apply to the specified words and phrases as used in this Article:

"a.  *  *  *

"b. 'Probation' shall mean the release of a convicted defendant by a court under conditions imposed by the court for a specified period during which the imposition of sentence is suspended...."

Section 3 of Article 42.12, supra, as reorganized in 1985 provides that the "judges of the courts of the State of Texas having original jurisdictions of criminal actions" may place a defendant on probation after a conviction or a plea of guilty or nolo contendere where the maximum punishment assessed against the defendant does not exceed ten years' imprisonment and "it shall appear to the satisfaction of the court that the ends of justice and the best interest of the public as well as the defendant will be subserved thereby."

Section 3c of the statute under the 1985 version reads:

"Sec. 3c. Nothing herein shall limit the power of the court to grant probation of sentence regardless of the recommendation of the jury or the prior conviction of the defendant."

The provisions of Sections 3 and 3c are limited by the provisions of Section 3g(a) found in the 1985 amendment which reads:

"Sec. 3g. (a) *The provisions of Sections 3 and 3c of this Article do not apply:*

"(1) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

"(A) Section 19.03 (Capital murder);

"(B) Section 20.04 (Aggravated kidnapping);

"(C) Section 22.021 (Aggravated sexual assault);

"(D) Section 29.03 (Aggravated robbery); or

"(2) *to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom.* Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the

court shall enter that finding in its judgment." (Emphasis supplied.)

It is thus clear under the 1985 reorganization of Article 42.12, supra, in effect at the time of applicant's plea of guilty before the court in 1986, that upon the entry of an affirmative finding of a deadly weapon in the judgment the applicant was not eligible for "regular" probation by the trial court and the trial court was without "power" to grant the same. If applicant was not eligible for "regular" probation because of the affirmative finding, see § 3g(a), supra, then he was not eligible for shock probation under § 3e(a), supra, because he could be granted shock probation only if he was "otherwise eligible for probation under this article."

The trial court was correct in concluding that the 1986 plea bargain could not be carried out, and that applicant was entitled to the relief he sought.

The concurring opinion concludes that the trial court could have granted shock probation despite the affirmative finding of a deadly weapon. Judge Clinton, in his opinion, takes the reader back to 1977 and the 65th Legislature when the original shock probation law (S.B. 695) was enacted as § 3e of Article 42.12 as it then existed, and when the provisions of what is now § 3g(a) was enacted as § 3f of the then existing Adult Probation Law (S.B. 152). These bills coursed generally independent of each other through the legislative process. Regardless of whether one agrees with Judge Clinton or not about the construction to be placed upon the 1977 enactments, it is observed that in 1981 the shock probation provision of Article 42.12, supra, was completely rewritten and subsection (c) was added (Acts 1981, 67th Leg., ch. 69, p. 154, effective Sept. 1, 1981). As Judge Clinton notes, the bill analysis accompanying Senate Bill 123 (67th Leg.) plainly states that the bill proposed to restrict the categories of defendants who would be eligible for shock probation. This is clear when the 1981 version is compared to the 1977 version of § 3e(a). Inter alia, the time that the trial court retained jurisdiction was increased from 120 to 180 days, the 1977 provision that shock probation could be granted "if such sentence is otherwise eligible for probation under this article" was changed to provide that shock probation could be granted "only if: (1) the defendant is otherwise eligible for probation under this article," and the prohibition against granting "shock probation in cases of criminal homicide, rape, or robbery" was extended to a whole list of offenses designated by section numbers in the Penal Code, § 3e(a)(3).

Section 5 of the said S.B. 123 also provided: "A defendant's eligibility for shock probation is governed by this Act if the judgment of conviction is entered on or after the effective date of this Act. The eligibility for shock probation of a defendant as to whom a judgment of conviction was entered before the effective date of this Act is governed by the law in existence before the effective date, and that law is continued in effect for this purpose as if this law were not in force."

In 1983 the former offenses of rape and aggravated rape became sexual assault and aggravated sexual assault respectively. (Acts 1983, 68th Leg., R.S., chap. 977, p. 5311 (H.B. 2008).) Section 9 of said H.B. 2008 amended § 3e(a)(3) of Article 42.12, supra, to add the offense defined in § 22.021 of the Penal Code to those offenses for which shock probation was prohibited (replacing former §§ 21.03 and 21.05).

As amended in 1981 and 1983 § 3e(a) was brought forward in the complete reorganization of the Adult Probation Law (Article 42.12, supra) in 1985. We cannot agree that it was the intent of the Legislature in the reorganization of Article 42.12, supra, to permit shock probation by the court despite an affirmative finding of a deadly weapon in the judgment whereas the same would foreclose the trial court from granting "regular" probation.

The relief prayed for by the applicant is granted. The judgment and sentence in Cause No. F–8587181–KH in Criminal District Court No. 1 of Dallas County is set aside, and the applicant is ordered released to the custody of the Sheriff of Dallas

County to answer the indictment in said cause. A copy of this opinion will be furnished the Texas Department of Corrections by the Clerk of this Court.

It is so ordered.

CLINTON, Judge, concurring.

This is a post conviction application for writ of habeas corpus brought to this Court pursuant to the provisions of Article 11.07, V.A.C.C.P.

Applicant was indicted for attempted murder, as proscribed by V.T.C.A. Penal Code, § 15.01(a), on June 10, 1985. The indictment, omitting the formal portions, alleged that applicant attempted to "cause the death of Richard Reason ... by knowingly and intentionally shooting him with a handgun, a deadly weapon." Applicant waived trial by jury and entered a plea of guilty to the trial court on May 9, 1986. The trial court accepted the plea and entered a judgment sentencing applicant to ten years confinement in the Texas Department of Corrections. In the judgment, the trial judge entered a finding of "true (handgun)" in the area designated "findings on use of deadly weapon." The judgment also contains the notation "reviewed for shock probation after 120 days," and the docket sheet contains the notation "shock probation after 120 days."

Applicant alleges, and the State agrees, that the terms of the plea bargain entered between the State and applicant were that applicant was to be granted shock probation pursuant to Article 42.12 § 3e, V.A.C.C.P., after serving 120 days at the Texas Department of Corrections. Applicant further alleges that the plea bargain agreement which induced his plea of guilty cannot be fulfilled by the trial court, and that his guilty plea is thus involuntary. Applicant's reasoning is that the trial court's entry of an affirmative finding of the use of a deadly weapon prevented applicant from receiving shock probation.

All parties agree that, at the time applicant entered his guilty plea, the assistant district attorney assigned to the case, defense counsel, applicant and the trial court were under the impression that applicant could receive shock probation as per the plea agreement. At some later point not revealed in the record, all parties apparently concluded that applicant could not in fact receive shock probation, due to the operation of § 3g(a)(2) of Article 42.12, supra, on §§ 3 and 3c of Article 42.12, supra. Applicant now alleges that the terms of his plea bargain cannot be carried out, that his plea of guilty is thus involuntary and that he should be allowed to withdraw that plea. Applicant cites *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in support of his contention.

In accordance with the provisions of Article 11.07, supra, the trial court has adopted the State's proposed findings of fact and conclusions of law which indicate that applicant's plea of guilty was made with the assurance that he would be released on shock probation after serving 120 days in the Texas Department of Corrections. These findings and conclusions also indicate that "[i]n attempting to fulfill this plea bargain it was discovered that [a]pplicant was not eligible for shock probation" and that "[s]ince the plea was based upon a bargain which cannot be fulfilled, [it] was involuntary" and thus applicant should be allowed to be withdraw his plea. No reason is offered by any party as to why applicant was not eligible for shock probation, other than the interpretation of § 3g(a)(2) of Article 42.12, supra, apparently arrived at by the parties subsequent to applicant's plea of guilty.

The majority concludes that applicant is entitled to the relief he requests, without stating any reason why this plea bargain could not have been carried out as per its original terms. Implicit in the opinion is the conclusion that § 3g(a)(2) of Article 42.12, supra, operates to preclude an award of shock probation under § 3e of that Article.[1]

---

1. Section 3 of Article 42.12, supra, allows the judges of the courts of this state having original jurisdiction over criminal actions to suspend imposition of the sentence and place the defend- ant on probation, following conviction or a plea of guilty or nolo contendere. The only constraint on this power relevant to our discussion is that the maximum punishment assessed

I cannot agree with that conclusion, for the reasons set forth below.

I believe that a majority of this Court has fallen into the same erroneous interpretation of the relevant sections of Article 42.12, supra, as was adopted by the parties in the habeas court. This interpretation apparently proceeds from the phrase "otherwise eligible for probation under this article," contained in § 3e(a)(1). To be "otherwise eligible for probation" from the trial court suggests eligibility under the general criteria for judicial probation contained in §§ 3 and 3c, Article 42.12, supra, dealing with the general power of the trial court to grant probation. However, § 3g(a)(2) appears to limit eligibility for judicially granted probation under these sections, inasmuch as it prescribes that "the provisions of Sections 3 and 3c do not apply ... to a defendant when it is shown that the defendant used or exhibited a deadly weapon ... during the commission of a felony offense or in immediate flight therefrom." Thus it is believed that where an affirmative finding is made under § 3g(a)(2), an accused is not "otherwise eligible for probation," and thus not a candidate for shock probation. It appears that the trial court, as well as defense counsel and the prosecutor, felt he did not have the authority to grant applicant shock probation because he had found that appellant used a deadly weapon during the attempted murder in issue.

A reasoned analysis of the genesis of the statutes in issue reveals that applicant was in fact eligible for shock probation from the trial court, despite the affirmative finding that applicant used a deadly weapon during the commission of the instant felony offense. For this reason, I am unable to accept the tacit assumption of the majority that one is not eligible for shock probation when one has been found guilty of a felony offense and there is an affirmative finding of the use or exhibition of a deadly weapon during the commission of that offense or in the immediate flight from the commission of that offense.

My analysis begins with this Court's opinion in *West v. State*, 702 S.W.2d 629

against the defendant not exceed ten years imprisonment.

Section 3c provides that nothing contained in Article 42.12, supra, limits the power of the trial court to grant probation of the sentence regardless of the recommendation of the jury or of any prior conviction of the defendant.

Section 3e(a) provides as follows:

"(a) For the purposes of this section, the jurisdiction of a court in which a sentence requiring confinement in the Texas Department of Corrections is imposed for conviction (of a felony) shall continue for 180 days from the date the execution of the sentence actually begins. After the expiration of 60 days but prior to the expiration of 180 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if:

(1) the defendant is *otherwise eligible for probation under this article;* and

(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony; and

(3) the offense for which the defendant was convicted was other than those defined by Section 19.02, 20.04, 22.021, 22.03, 22.04(a)(1), (2), or (3), 29.03, 36.02, 38.07, 71.02, or a felony of the second degree under Section 38.10, Penal Code."

Section 3g(a) provides as follows:

"(a) The provisions of Sections 3 and 3c of this Article do not apply:

(1) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

(A) Section 19.03 (Capital murder);

(B) Section 20.04 (Aggravated kidnapping);

(C) Section 22.021 (Aggravated sexual assault);

(D) Section 29.03 (Aggravated robbery); or

(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or in immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment."

(Tex.Cr.App.1986).[2] There Judge Tom Davis indicated that "probation" is a term having more than one meaning and more than one set of restrictions, depending upon the statute authorizing its imposition. *Id.* at 634. Article 42.12, supra, provides the statutory mechanisms by which a trial judge may grant "regular" or "initial" probation in §§ 3 and 3c, deferred adjudication or "unadjudicated probation" in § 3d, or "shock" probation in § 3e (felony) and § 3f (misdemeanor). *Id.* Article 42.12, supra, also makes provision for the jury to grant probation, in § 3a. Finally, § 3g(b) of Article 42.12, supra, allows the trial judge to sentence a defendant who has been convicted of a felony of the second degree or higher to a brief period in the penitentiary where the jury has recommended probation (which recommendation would otherwise be binding on the trial judge under § 3a) but the jury has also made an affirmative finding as to the use or exhibition of a deadly weapon during the commission or in flight from the commission of the offense.

The crux of understanding the probationary scheme set forth in Article 42.12, supra, lies in Judge Davis' statement that "all [these] forms of probation discussed above are independent of each other, in the sense that a defendant may be eligible under the statute for one or two forms, but not [another]." *West v. State,* supra, at 634. Naturally, some care must be exercised in reading these various sections to arrive at a correct understanding of the whole.

Facially by its express terms 3g(a) bars application of §§ 3 and 3c only. The latter deal with power of a trial court to grant probation to an eligible defendant "when it shall appear to the satisfaction of the court that the ends of justice and the best interests of the public as well as the defendant will be subserved thereby," "regardless of the recommendation of the jury or prior conviction of the defendant." The mechanism in § 3 is "to suspend imposition of the sentence and place the defendant on probation" for a period of not more than ten years nor less than the minimum prescribed for the offense for which he was convicted, without regard to the term of punishment assessed. Thus, the court may not exercise the power provided by §§ 3 and 3c when § 3g(a) is implicated.

Section 3g(a) is not a complete ban on the power of a trial court to grant probation; it does not purport to bar application of § 3d (deferred adjudication) or § 3e (shock probation), the latter being our concern here.

Unlike a *suspension* of imposition of sentence under § 3, Section 3e contemplates conviction and *imposition of sentence* by a trial court, followed by incarceration of defendant in TDC actually to serve the sentence imposed. See *O'Hara v. State,* 626 S.W.2d 32, at 35 (Tex.Cr.App.1981), and *Tamez v. State,* 620 S.W.2d 586, at 588, n. 3 (Tex.Cr.App.1981). Jurisdiction of the trial court over defendant continues for 180 days. After the first 60 days, "if in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary," the convicting court may exercise its continuing jurisdiction to "suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article"—provided, of course, he is otherwise eligible for probation and is not disqualified under § 3e(a)(2) and (3). Section 3e; *Tamez v. State,* supra.

That defendant be "otherwise eligible for probation under this article," § 3e(a)(1), is not entirely free of ambiguity. Accordingly, I now turn to a detailed examination of legislative history and intent underlying §§ 3e(a) and 3g(a) of Article 42.12, supra. Tex. Gov't Code Ann. § 311.023(3).

### SENATE BILL 695

Section 3e(a) of Article 42.12, supra, was originally introduced in the Regular Session of the 65th Legislature as Senate Bill 695 by Senator Schwartz on February 22, 1977. The portion significant to my discussion read as follows:

---

2. I adhere to the views set forth in my dissenting opinion in that case. See *West v. State,* supra at 635 (Clinton, J., dissenting).

"... After the expiration of 60 days but prior to the expiration of 120 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may, on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the defendant on probation under the terms and conditions of this article, *if such sentence did not exceed 10 years* and prior to the execution of such sentence, the defendant had never been incarcerated in a penitentiary serving a sentence for a felony and in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary." [3]

The bill as originally drafted clearly evidences an intent to create a new version of probation which was to come into play after the defendant had begun serving a portion of his or her sentence. This new shock probation was to have three conditions precedent; specifically, that the sentence imposed have been less than ten years, that the defendant not have been previously incarcerated for a felony, and that the judge be of the opinion that the defendant would not profit from further incarceration. Indeed, the bill analysis accompanying Senate Bill 695 states that this legislation proposes to "provide for continuing jurisdiction by a trial court for the purpose of allowing probation after a defendant has actually begun serving a sentence after a finding of guilt."

The bill was amended in the House on May 11, 1977, and the Senate concurred in those amendments on May 17. As finally approved by the legislature and signed into law, what would be codified as § 3e provided in part as follows:

"... After the expiration of 60 days but prior to the expiration of 120 days from the date the execution of the sentence actually begins, the judge of the court that imposed such sentence may, on his own motion or on written motion of the defendant, suspend further execution of the sentence imposed and place the de-fendant on probation under the terms and conditions of this article, *if such sentence is otherwise eligible for probation under this article* and prior to the execution of such sentence, the defendant had never been incarcerated in a penitentiary serving a sentence for a felony and in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary. Probation may be granted under this section only if the offense for which the defendant was sentenced was an offense other than criminal homicide, rape, or robbery."

As amended the statute specified three offenses for which the trial judge could not grant shock probation, and substituted "if such sentence is otherwise eligible for probation under this article" for the language in the original bill "if such sentence did not exceed 10 years." The key to disposition of this cause is the precise interpretation of the phrase "otherwise eligible for probation under this article."

At the time this bill was introduced and discussed in the legislature, Article 42.12, supra, did not contain any provisions numbered later than what is now (and was then) § 3d. Examination of those sections of Article 42.12, supra, which were in effect when the precursor to the present § 3e was under discussion suggests strongly that those sections provided the sole reference point to which legislators referred when drafting the language now in issue. The original language of the bill, that the sentence not exceed ten years, coincides with the maximum allowed term of confinement set forth in §§ 3 and 3a, Article 42.12, supra, which respectively govern "initial" or "regular" probation from the trial judge and from the jury. Additionally, the provision that a defendant may not receive shock probation when he or she has previously been incarcerated for a felony closely parallels the provision of § 3a that the jury may not recommend probation unless the defendant has filed a sworn motion to the effect that he or she has not previously been convicted of a felony. These parallels

---

**3.** All emphasis mine unless otherwise indicated.

strongly suggest that in revising the statute to provide "otherwise eligible for probation under this article," the legislature was thinking exclusively in terms of those limitations already appearing in §§ 3 and 3c.

## SENATE BILL 152

Section 3g(a) was originally introduced as § 3e by Senator Meier in Senate Bill number 152 during the regular session of the 65th legislature on January 12, 1977. As originally introduced in the Senate, the bill read as follows:

"Section 3e. The provisions of Sections 3, *3a*, 3c, and *3d* of this Article do not apply:

(a) to a defendant adjudged guilty of an offense defined by the following sections of the Penal Code:

(1) Section 19.02 (Murder);

(2) Section 20.04 (Aggravated kidnapping);

(3) Section 21.02 (Rape);

(4) Section 21.03 (Aggravated rape);

(5) Section 21.04 (Sexual abuse);

(6) Section 21.05 (Aggravated sexual abuse);

(7) Section 29.02 (Robbery);

(8) Section 29.03 (Aggravated robbery); or

(b) when it is shown that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight after the commission of the offense."

Thus as originally conceived the bill seems to have been designed to preclude the award of *any type* of probation to a defendant when there has been an affirmative finding as to the use or exhibition of a deadly weapon. However, amendments to the bill prior to its passage, as well as its subsequent treatment by the legislature, unquestionably altered this original design.

The House adopted several amendments to Senate Bill 152, many of which the Senate was unwilling to accept. Thus, a conference committee was selected to arrive at a compromise version of the bill. It is particularly important to note that the Conference Committee report summarizes the relevant portions of Senate version of the bill as follows:

"Section 3e is new and provides that *judicial and jury probation does not apply* when a person is adjudged guilty of:

Murder

Aggravated kidnapping

Rape

Aggravated rape

Sexual abuse

Aggravated sexual abuse

Robbery

Aggravated robbery

or when it is shown that a deadly weapon, except a firearm, was used during the commission of an offense or immediate flight therefrom. There must be an affirmative finding of the use or exhibition of the deadly weapon and it shall be entered in the court's judgment. The defendant may receive probation by the imposition of extraordinary judicial probation or extraordinary jury probation. *If the defendant used or exhibited a firearm during the commission of an offense or during immediate flight therefrom, the defendant is not eligible for jury probation, judge probation, extraordinary judicial probation or extraordinary jury probation.*"

That same Conference Committee report summarized the pertinent portions of the House version of the bill as follows:

"Section 3e is new and provides that *ordinary judicial probation does not apply* when a person is adjudged guilty of:

Capital Murder

Aggravated kidnapping

Aggravated rape

Aggravated sexual abuse

Aggravated robbery

or when it is shown that a deadly weapon was used or exhibited during the commission of a felony offense or immediate flight therefrom. There must be an affirmative finding of the use or exhibition of the deadly weapon and it shall be entered in the court's judgment."

or when it is shown that a deadly weapon was used or exhibited during the commission of a felony offense or immediate flight therefrom. There must be an affirmative finding of the use or exhibition of the deadly weapon and it shall be entered in the court's judgment. *The defendant may receive probation by a jury or by the imposition of extraordinary judicial probation.*

If the defendant used or exhibited a firearm during the commission of a felony offense of the second degree or higher, or immediate flight therefrom, the defendant is not eligible for jury probation, judicial probation or extraordinary judicial probation. An affirmative finding of the use or exhibition of a firearm must be made and entered in the court's judgment."

The Conference Committee ultimately adopted the House version of Section 1 of the bill, which would become § 3g of Article 42.12, supra. As enacted, then, what appears originally to have been intended as a limitation upon all extant forms of probation, by its express terms limited only the power of the judge to grant probation under the provisions of §§ 3 and 3c.

The only notation of interest in that Committee report was that the Conference Committee version was "identical to the House version with the following exceptions: Section 3e is renumbered to 3f because of SB 695 (shock probation), which has passed both the House of Representatives and Senate and used 3e." Thus, in revising Senate Bill 152 the Conference Committee was clearly aware of the existence of Senate Bill 695, which was introduced after Senate Bill 152 but which would be signed by the governor on May 30, while Senate Bill 152 would not be signed until June 10, both to be effective 90 days after adjournment. The members of the Conference Committee certainly had the opportunity to include shock probation as one of the sentencing options foreclosed by an affirmative finding of the use or exhibition of a deadly weapon, had they chosen to do so. Indeed, it would have required minimal effort to have listed § 3e along with §§ 3 and 3c in the opening portion of § 3g(a) as being among those sections of Article 42.12, supra, which are not applicable when an affirmative finding has been made, had the legislators intended to foreclose an award of shock probation in such circumstances.

I conclude that this was not the intent of the legislators who revised Senate Bill 152, which would eventually become § 3g(a). My conclusion is based in part on the Conference Committee's reference to "ordinary judicial probation" in the committee report, a term which the committee obviously understood to be different from "shock probation," which was mentioned literally in the next column of that committee report.

Furthermore, both Senate Bill 695 and Senate Bill 152 restricted eligibility for their respective forms of probation to those convicted of offenses other than murder, rape and robbery. If one reads "otherwise eligible ..." in Senate Bill 695 (now § 3e(a)(1)) to refer to the provisions of Senate Bill 152 (now § 3g(a)(1)), the prohibition against awarding shock probation to one convicted of "criminal homicide, rape, or robbery" in Senate Bill 695 (now § 3e(a)(3)) would be redundant, as the same proscription is already contained in Senate Bill 152 (§ 3g(a)(1)). We presume that the legislature intended to give effect to every word in the respective statutes. The most obvious way to effectuate each of these provisions is to interpret Senate Bill 695 (§ 3e(a)(1)) to refer *only* to those limitations already extant in 1977, *viz.*, those found in §§ 3 and 3a of Article 42.12, supra.

Obviously § 3g(a) was intended to prevent the trial judge from granting "initial" or "regular" probation, pursuant to §§ 3 and 3c, to those convicted of the offenses enumerated in § 3g and to those whom the trier of fact specifically found to have used or exhibited a deadly weapon during the commission of a felony or in immediate flight therefrom. § 3g(a) should not be read as a prohibition against the award of shock probation to one so situated.

### SUBSEQUENT AMENDMENTS

Apparently three sessions of the Texas Legislature have read §§ 3e and 3g(a) as I

do now, for these sections have been amended on three separate occasions in a manner suggesting that they are *not* to be read as the majority tacitly suggests.

Specifically, Senate Bill 123, authored by Senator Brooks and introduced in the Regular Session of the 67th legislature on January 12, 1981, amended § 3e(a) to restrict the scope of the applicability of shock probation. The bill analysis accompanying Senate Bill 123 plainly states that "(t)he bill proposes to restrict the categories of defendants who would be eligible for shock probation." The amendments, as enacted in Chapter 69, 67th Legislature, Regular Session, page 154, read in pertinent part as follows:

"Probation may be granted under this section only if:

(1) the defendant is otherwise eligible for probation under this article; and

(2) the defendant had never before been incarcerated in a penitentiary serving a sentence for a felony; and

(3) the offense for which the defendant was convicted was other than those defined by Section 19.02, 20.04, 21.03, 21.05, 22.03, 22.04(a)(1), (2), or (3), 29.03, 36.02 38.07, 71.02 or a felony of the second degree under Section 38.10, Penal Code."

Note that several of the offenses listed in this amendment to § 3e are already contained in the list of offenses set forth in § 3g(a), supra. Specifically, aggravated kidnapping (§ 20.04), aggravated rape (§ 21.03), aggravated sexual abuse (§ 21.-05), and aggravated robbery (§ 29.03) all appear in the list of offenses for which shock probation may not be granted, as well as in the list of offenses to which the provisions of §§ 3 and 3c do not apply through operation of § 3g(a). The addition of three of the offenses already listed in § 3g(a) to the offenses which preclude an award of shock probation, as set out in the amendments to § 3e(a), would certainly be a redundant act if the legislature intended that § 3g(a) limit the availability of shock probation under § 3e(a). Our courts will generally presume that the legislature intended that the entire statute be effective,

and did not intentionally legislate a redundancy in amending § 3e(a). *Heckert v. State*, 612 S.W.2d 549, 552 (Tex.Cr.App. 1981); *Ex parte Santellana*, 606 S.W.2d 331, 333 (Tex.Cr.App.1980); *Morter v. State*, 551 S.W.2d 715, 718 (Tex.Cr.App. 1977). Thus, even if the language of the original versions of §§ 3e(a) and 3g(a) might lend itself to the interpretation I now reject, I would conclude that this subsequent amendment to § 3e(a) clearly indicates that the legislature did not intend for § 3g(a) to control the granting of shock probation under § 3e(a).

Sections 3e(a) and 3g(a) were again the subject of legislative scrutiny in 1983, when the old offenses of rape and aggravated rape were changed to sexual assault and aggravated sexual assault respectively. House Bill 2008, introduced by Representative Danberg, which became Chapter 977, Acts of 1983, 68th legislature, Regular Session, updated relevant sections of both §§ 3e and 3g. Indeed, § 9 of Chapter 977, supra, adds V.T.C.A. Penal Code, § 22.021 to the list of offenses enumerated in § 3e(a), and § 10 of Chapter 977 adds the same provision to § 3g(a). Thus the legislature has simultaneously examined and amended §§ 3e(a) and 3g(a), subsequent to the time of their passage, and apparently concluded that "otherwise eligible for probation under this article" in § 3e(a) does not embrace the restrictions contained in § 3g(a).

Finally, Acts of 1985, 69th legislature, Regular Session, Chapter 427, § 1, page 1531, amended and recodified all of Article 42.12, supra. This act changed the designation for what was then § 3f to the current § 3g. Once again the legislature left §§ 3e(a) and 3g(a) substantively unchanged, thus evincing a clear understanding on the part of legislators that these sections served separate and distinct functions.

Thus three sessions of the legislature have examined §§ 3e(a) and 3g(a) since their enactment, and all three have apparently concluded that the prohibitions set forth in § 3g(a) apply only to the ability of a trial judge to grant "initial" or "regular" probation pursuant to §§ 3 and 3c, and not

to the ability of the judge to assess shock probation pursuant to § 3e(a).

### CONCLUSION

The trial court's misinterpretation of § 3g(a), supra, prevented that court from honoring the terms of the plea agreement in effect in applicant's case. I believe that the trial court did have the authority to award applicant shock probation after he had served 120 days in the Texas Department of Corrections, as per the terms of the original plea agreement. Indeed, that is what the trial court should have done, but did not because of the parties' mutual misapprehension of the statute which arose at some point in time after applicant's plea of guilty. Contrary to the habeas court, and the majority in this Court, I do not characterize this as a case in which the parties entered into a plea bargain which could not later be fulfilled. Rather, I would characterize this as a case in which the parties entered into a valid plea bargain agreement which was later breached by the trial court, albeit in good faith reliance on its understanding of the statutory scheme.

Where there is a broken plea bargain agreement, the appropriate remedy is specific performance of the original terms of that agreement or withdrawal of the plea, depending upon the circumstances of the particular case. *Ex parte Burton*, 623 S.W.2d 418, 419 (Tex.Cr.App.1981); *Joiner v. State*, 578 S.W.2d 739, 741 (Tex.Cr.App. 1979). Here, the clear language of § 3e(a), Article 42.12, supra, divests the trial court of jurisdiction to grant shock probation after the expiration of 180 days from the date the execution of the sentence actually begins. *Houlihan v. State*, 579 S.W.2d 213, 219–20 (Tex.Cr.App.1979) (interpreting an earlier version of § 3e(a) which contained a 120 day time limit). The appropriate remedy is to allow applicant to withdraw his plea of guilty and return him to the trial court to answer the indictment.

Thus I concur only in the judgment of the Court.