James BRYANT, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–97–00415–CR.

Court of Appeals of Texas,
San Antonio.

July 1, 1998.

Marina Douenat Kubecka, San Antonio, for Appellant.

Daniel Thornberry, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Before HARDBERGER, C.J., and RICKHOFF and ANGELINI, JJ.

## OPINION

HARDBERGER, Chief Justice.

### NATURE OF THE CASE

This is an appeal from a ten-year sentence for aggravated assault with a deadly weapon. Appellant, James Bryant, Jr., argues that the State violated its plea agreement with him and that he received ineffective assistance of counsel. We affirm the judgment.

### FACTS AND PROCEDURAL HISTORY

On January 14, 1997, Bryant was indicted for aggravated assault with a deadly weapon. The record indicates that he severely beat and slashed with a knife the woman with

whom he was living. After seeking medical attention, the woman went to authorities and named Bryant as her attacker.

Bryant and the State entered into a plea agreement with the State that called for a plea of guilty in return for a recommended sentence of a $1,000 fine and ten-years confinement. In the agreement, the State indicated that it would not recommend deferred adjudication but would remain silent on a probated sentence.

At the hearing on Bryant's plea, the State reneged on its agreement. The State told the trial court that if there was an affirmative finding that Bryant used a deadly weapon in the assault, as charged in the indictment against him, the court *could not* give probation. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12 § 3g (Vernon Supp.1998) (probation not available to defendants found to have used a deadly weapon in commission of a felony). On direct questioning from the court, the State refused to drop the deadly weapon portion of the charge. Thus, as the State concedes, it did not live up to the terms of the agreement it had entered with Bryant.

The trial court told Bryant that, unless the deadly weapon charge were dropped, the only punishment options available were deferred adjudication, which the State had explicitly advised against, and ten-years imprisonment. The plea stood; the trial court accepted it and sentenced Bryant to ten years and fined him $1,000. Bryant appeals, raising four points of error: (1) that the State violated its plea agreement, rendering his plea involuntary under both the United States and Texas constitutions; (2) that the trial court denied him counsel, as provided for by the United States and Texas constitutions, because his counsel was ineffective at trial and on appeal; (3) that the trial court denied him counsel, as provided for by the United States and Texas constitutions, by failing to appoint counsel for appeal; and (4) that the trial court erred by failing to rule on his timely filed motion for new trial.

## THE PLEA AGREEMENT

The State concedes that, by refusing to drop the deadly weapon portion of its charge, it violated its agreement to stand silent on probation. However, the State argues that no harm occurred because Bryant agreed to plead guilty in spite of the violation. We agree.

When the trial judge determined that the State would seek an affirmative finding on the deadly weapon portion of the indictment, she informed Bryant that the agreement he entered into was no longer viable:

COURT: Okay, Mr. Bryant, what I need to do right now is to tell you that the indictment alleges a deadly weapon. If the indictment alleges a deadly weapon and the State does not tell me that they are not seeking an affirmative finding of a deadly weapon, what I am going to do is to make an affirmative finding of a deadly weapon, so in effect that means you would only be eligible for what we call deferred adjudication. Do you understand that?

BRYANT: Yes, ma'am, Your Honor.

COURT: Are you willing to go forward with the plea bargain agreement, such as it is?

BRYANT: Yes, ma'am, Your Honor.

COURT: Counsel?

DEFENSE: Your Honor, this is not a triable case, and we have made the best arrangement we think we can make. I understand that the Court may very well not give him deferred adjudication and he understands that is a distinct possibility.

Later, the trial judge spelled the sentencing options out explicitly:

Mr. Bryant, I just need for you to understand that as far as I'm concerned, at this point, there are two options. One, either to sentence you to a term at the Texas Department of Criminal Justice Institutional Division for not more than ten years or ten years. I can decide whether or not to give you the full ten years or less, but certainly no more than ten. And secondly, the other option left to the court is to grant your application for deferred adjudication, which means basically that you would be on probation. It's not a regular probation, but it's an either/or because unless the State and you have entered into an

agreement that there will not be an affirmative finding of a deadly weapon, I am telling you right now, Mr. Bryant, that I will make an affirmative finding of a deadly weapon, so there are only two options open to the court, not three. Either deferred adjudication or time in prison?

Bryant indicated that he understood what he was being told, and he let his plea stand.

When a defendant enters a plea of guilty or nolo contendere pursuant to a plea bargain agreement, the State is bound to live up to its side of the agreement or the plea is rendered involuntary. *DeRusse v. State*, 579 S.W.2d 224, 236 (Tex.Crim.App.1979). If the State does not honor its part of the agreement, doubt is raised about the voluntariness of the plea. *Bass v. State*, 576 S.W.2d 400, 401 (Tex.Crim.App.1979). Where the provisions of a plea agreement later become unenforceable, the plea is involuntary. *Ex parte Huerta*, 692 S.W.2d 681, 682 (Tex.Crim.App. 1985).

Bryant claims that his case is analogous to *Ex parte Austin*, 746 S.W.2d 226 (Tex.Crim. App.1988), in which the court granted habeas relief to a defendant after his plea agreement was violated. In that case, the State recommended shock probation after charging the defendant with a deadly weapon offense. *Austin*, 746 S.W.2d at 229. After the court had accepted the plea, the parties learned that shock probation was not available for deadly-weapon offenses. *Id.* at 227. The defendant claimed that his plea was involuntary, and the court of criminal appeals agreed. *Id.* at 227–29.

Bryant's reliance on *Austin* is misplaced. In that case, the trial court had accepted the plea agreement. That is not the case here. A defendant does not have a protected right to enforce performance of an agreement if it is subsequently withdrawn by the State. *Purser v. State*, 902 S.W.2d 641, 648 (Tex.App.—El Paso 1995, pet. ref'd). A plea agreement is an executory contract and does not become operative until the plea has been entered and the court has announced that it will be bound by the agreement. *Ex parte Williams*, 637 S.W.2d 943, 947 (Tex. Crim.App.1982), *cert. denied*, 462 U.S. 1108, 103 S.Ct. 2458, 77 L.Ed.2d 1336 (1983).

Here, the parties knew at the time of the entering of the plea that probation was not an option unless the deadly weapon finding was dropped. The State refused to drop the charge. The State was entitled to change the conditions of its agreement with Bryant or even withdraw its offer entirely, prior to the trial court's accepting the agreement. *Purser*, 902 S.W.2d at 648; *De Russe*, 579 S.W.2d at 236. This fact does not vitiate the requirement that Bryant's plea of guilty be made voluntarily, but the record affirmatively establishes that his plea was voluntary and knowing. He told the judge twice that he understood that only two punishment options were available after the State refused to withdraw the deadly weapon portion of the charge. His attorney also indicated that both he and his client understood the possible consequences of the plea. This is what the law requires. *See Hancock v. State*, 955 S.W.2d 369, 372 (Tex.App.—San Antonio 1997, no pet.).

Bryant's counsel argued before this court that Bryant was given no opportunity to confer with his attorney after the State announced it would stand by its indictment. Counsel stated that a "breathing period" was in order, so that Bryant could be fully apprized of his options. We agree that having time to consider options would be ideal. However, we cannot judicially impose upon trial judges a requirement that they allow an arbitrarily determined period of time for defendants to consider their options under circumstances such as these. It is incumbent upon trial counsel to request such time, where warranted. Here, no time was requested, and the trial judge had no reason to believe it was needed. Both Bryant and his attorney exhibited unequivocal understanding of the proceedings.

Because the trial court advised Bryant of his rights and options after the State reneged on its agreement, we find that Bryant's guilty plea, while perhaps originally induced by the State's promise to remain silent on probation, was nonetheless made knowingly and voluntarily at the time it was entered. Bryant's first point of error is overruled.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second point of error, Bryant claims that his counsel was so defective at trial and on appeal that he was denied his constitutionally protected right to counsel. *See* U.S. CONST. amend. VI and amend. XIV; Tex. Const. art. I, § 10. He further asserts that, but for these errors, his case would have resulted differently. The record does not support these claims.

To prove he received ineffective assistance of counsel, a defendant must show first that the attorney made such serious errors that the attorney was not functioning effectively as counsel and, second, that the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 56–57 (Tex.Crim. App.1986). Prejudice is shown when the defendant can prove that there is a reasonable probability that, but for the errors, the result of the proceeding would have been different. *Hernandez,* 726 S.W.2d at 55.

Bryant brings no competent evidence to support his claims of ineffective assistance of counsel. He argues that counsel was ineffective for advising him to plead guilty because a plea of guilty with a ten-year recommended sentence is not preferable to going to trial. He also argues that counsel was ineffective for recommending that he plead guilty to the deadly weapon charge, for essentially the same reason. However, these arguments are conclusory. A guilty plea might be preferable to a trial for many reasons. This court does not know why Bryant pleaded guilty, but we know that he did, and there was no evidence that he was forced to do so. Without proof that there was *no* reason to avoid trial, Bryant's bare allegations do not make it so. Further, there is no evidence that, as Bryant seems to suggest, his attorney did not understand the ramifications of the deadly weapon allegation or that he failed to research the applicable law.

Bryant also claims that his trial counsel failed to interview mitigating witnesses. Prior to the hearing on the plea, Bryant's current girlfriend sent a letter to the trial court stating that Bryant had been tricked by the State into pleading guilty. According to this letter, the State had told Bryant that his girlfriend had made a statement against him, which made Bryant feel as though he had no chance at trial. In the letter, the girlfriend stated that she had not made a statement. Bryant states that this letter, together with a letter he wrote to the trial court requesting a new trial on the same grounds, show that there were mitigating witnesses whom his trial attorney could have, and should have, interviewed.

■ We note initially that neither letter is sworn to, in spite of Bryant's characterization of them as "affidavits." The letters do not directly claim that the attorney failed to interview witnesses. Instead, the girlfriend's letter alleges that Bryant was misinformed about a statement that she supposedly gave to police. This allegation is hearsay and not competent evidence. Nor does Bryant's letter to the trial judge, making the same allegations, demonstrate that his trial counsel failed to interview anyone.

■ Bryant argues that his counsel was deficient in allowing him to plead guilty to the indictment when it became clear that the deadly weapon charge would stand. He analogizes his case to *Booth v. State,* 725 S.W.2d 521 (Tex.App.—Tyler 1987, pet. ref'd). In *Booth,* the court found that the defendant's attorney had not explained the law relative to murder and manslaughter and had thus permitted the defendant to plead guilty to murder when a manslaughter defense was available to him under the facts of the case. *Booth,* 725 S.W.2d at 524–25. However, in that case, the trial attorney testified on the defendant's motion for new trial. *Id. at 523.* Thus, the record "conclusively" established ineffective assistance. *Id.* at 524. Here, there is simply no proof of error or prejudice. In the absence of such proof, we overrule this point of error.

## RIGHT TO COUNSEL

In his third point of error, Bryant claims that the trial judge deprived him of counsel by not appointing an attorney to represent him on his motion for new trial. *See* U.S. CONST. amend. VI and XIV; Tex. Const. art. I, § 10.

Bryant filed a pro se notice of appeal on May 19. On May 27, he filed a motion requesting appointment for counsel on appeal. Two days later, his trial counsel filed a motion to withdraw as counsel. This motion was not acted upon, but a second motion to withdraw was granted on July 2, and new counsel was appointed July 10. Bryant argues that he was thus unrepresented for the 45 days following his appeal. We disagree. The actions of the trial court did not deprive Bryant of counsel; his trial counsel represented him until the second motion to withdraw was granted. *Ward v. State,* 740 S.W.2d 794, 798 (Tex.Crim.App.1987). The fact that Bryant's attorney did not file a motion for new trial on his behalf does not mean that Bryant was denied counsel. *Ortega v. State,* 837 S.W.2d 831, 832 (Tex.App.—San Antonio 1992, no pet.). In the absence of proof of prejudice, we cannot hold that the trial attorney's failure to file a motion for new trial or notice of appeal was ineffective assistance of counsel. *Cf. Yuhl v. State,* 784 S.W.2d 714, 717 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd) (unless defendant can show unfiled motion to suppress would have been meritorious, he cannot show ineffective assistance of counsel). Absent from the record is any legally competent evidence that such filings were prudent.

### FAILURE TO CONDUCT HEARING ON MOTION FOR NEW TRIAL

In his final point of error, Bryant complains that the trial court erred in allowing his motion for new trial to be overruled by operation of law. Bryant claims that he "filed" his motion on June 11, the last day available for him to file. The clerk did not receive the motion until June 16.

There is some debate between the parties about whether the motion was timely filed. We accept Bryant's claim that it was. Texas Rule of Civil Procedure 5 states that documents are timely filed if postmarked on or before the last day for filing and are received not more than ten days late has been applied in the criminal context. *See Perez v. State,* 629 S.W.2d 834, 838 (Tex.App.—Austin 1982, no pet.). Bryant's motion for new trial was due June 11. He points to an envelope in the record with a postmark bearing that date. The State suggests that, because of its placement in the record, the submitted envelope is not the envelope in which Bryant mailed his motion. We see no reason to accept this argument, and we will assume that the motion was timely filed. *See id.* (envelope bearing proper postmark makes prima facie case of timely filing). The next question is whether the trial court was required to hold a hearing on the motion.

A trial judge must hold a requested hearing on a properly presented motion for a new trial that raises matters that are not determinable from the record. *Jordan v. State,* 883 S.W.2d 664, 665 (Tex.Crim.App. 1994). Bryant's motion was not properly presented; nor did it raise matters not determinable from the record.

The record does not reflect that the motion was properly presented within ten days of filing. *See* TEX.R.APP. P. 21.4; TEX. R.APP. P. 21.6; *see also Carranza v. State,* 960 S.W.2d 76, 79 (Tex.Crim.App.1998); *Musgrove v. State,* 960 S.W.2d 74, 76 (Tex. Crim.App.1998). The movant bears the burden of actually delivering a motion for new trial to the trial court or otherwise bringing the motion to the attention or *actual notice* of the court. *Carranza,* 960 S.W.2d at 79. Mere filing is not sufficient. *Id.* at 78. There is nothing here to show that Bryant met this burden.

In addition, a hearing is required only when the motion raises matters not determinable from the record. *Reyes v. State,* 849 S.W.2d 812, 816 (Tex.Crim.App. 1993). Bryant's motion claims that his counsel did not fully explain his plea bargain to him. The trial judge could have determined from the record that, even if the attorney had failed to do so, she, herself, fully admonished the defendant at the time of the oral modification. There was no need for the trial court to look outside the record to determine that the motion was without merit.

We overrule this point.

## CONCLUSION

The record presented to this court shows that Bryant entered his plea voluntarily and knowingly. The record does not support Bryant's claims that he was not provided counsel or that he received ineffective counsel at trial or in post-trial matters. Further, the trial court did not err in allowing Bryant's motion to be overruled by operation of law, because that motion presented matters that were determinable from the record. Accordingly, we affirm the judgment of the trial court.