No. 04-97-00994-CR



Jonathan GOMEZ,


Appellant



v.



The STATE of Texas,


Appellee



From the 186th Judicial District Court, Bexar County, Texas 


Trial Court No. 95-CR-2276-B


Honorable Terry McDonald, Judge Presiding



Opinion by: Catherine Stone, Justice


Sitting: Alma L. López, Justice

 Catherine Stone, Justice

 Paul W. Green, Justice


Delivered and Filed: April 7, 1999


AFFIRMED


 Jonathan Gomez appeals his murder conviction. In four points of error, Gomez challenges
his conviction on the grounds that his plea was involuntarily entered. We overrule Gomez's
contentions and affirm the trial court's judgment.


 Factual and Procedural History


 On the evening of January 14, 1995, Gomez and several friends met for a party. At some
point in the night, apparently after the group's supply of cocaine and beer had been consumed,
Gomez left the party with Carmelo Jimenez, Greg Alvarez, Dannie Moore-Mata, and Ace Sosa to
purchase more beer. Realizing that they had no money, Carmelo suggested that they drive to
Conception Park to "get money from the queers." Once at the park, the men walked to the
bathrooms where they met up with Richard Hernandez. Carmelo began harassing Hernandez, asking
him about his sexual orientation, inquiring into what he was doing in the park late at night, and
admonishing him that the park was for family use, not homosexual activity. The men exchanged
a few punches before Hernandez broke free and ran. Gomez and friends gave chase, and threw a
beer bottle at Hernandez's head, knocking him to the ground. Ace first jumped on Hernandez as he
was trying to stand up, kicking him either in the shoulder or face. Gomez then entered the fracas
armed with an open buck knife. Gomez began stabbing Hernandez. Despite Hernandez's pleas for
mercy, Gomez stabbed him, yelling "die m------f------, die." Hernandez passed out, regained
consciousness momentarily at which time he was struck in the head with another beer bottle. Gomez
then delivered several more fatal stab wounds. The autopsy report identified eight stab wounds on
Hernandez's back and neck.

 Gomez was indicted for capital murder. On January 31, 1996, five days into the jury-selection process, Gomez entered into a plea agreement with the State. In exchange for a guilty plea
and his testimony in any trial proceeding against the other individuals involved in Hernandez's
murder, the State agreed to reduce Gomez's charge from capital murder to first-degree murder with
a sentence of life imprisonment, eligible for parole in thirty years. Before accepting Gomez's guilty
plea, the trial court inquired of Gomez if that was his signature on the plea agreement, whether he
understood the terms of the agreement and his responsibilities under the agreement, and whether he
understood the punishment that would be assessed if the agreement was honored. Gomez
affirmatively answered each question. The trial court also reviewed with Gomez a document entitled,
"Court's Admonishment and Defendant's Waivers and Affidavit of Admonitions." The trial court's
written admonishments in this document tracked the statutory language of article 26.13 of the Code
of Criminal Procedure. At the bottom of this document, Gomez acknowledged that he had read the
admonitions and that his attorney had explained the admonitions to him. The trial court again
inquired of Gomez if that was his signature on the document and whether he fully and completely
understood everything contained in it. Gomez affirmatively answered each question. After
reviewing these documents with Gomez, the trial court stated it would accept the terms of the plea
bargain, and that subject to the fulfillment of the terms of the agreement, it was finding Gomez guilty
of the offense of murder.

 On November 24, 1997, upon fulfillment of his part of the plea agreement, Gomez was
sentenced to life in prison in accordance with the plea agreement. Thereafter, Gomez filed a motion
for new trial, claiming his plea was involuntary as a result of ineffective assistance of counsel. The
motion for new trial was overruled by operation of law.

Ineffective Assistance of Counsel


 In points of error one and two, Gomez complains that his trial counsel's deficient
performance rendered his plea involuntary and that the trial court erred in failing to conduct a
hearing on his motion for new trial wherein he alleged this complaint. Specifically, Gomez alleges
that his trial counsel was ineffective for failing to explain possible trial defenses. In Gomez's
estimation, the facts of the case raised the issue of self defense, and but for his attorney's failure to
pursue this defense he would not have pled guilty. Gomez also asserted that his attorney erroneously
explained to him that under the plea bargain he would serve a thirty-year prison term, eligible for
parole in fifteen years. Gomez claims he would not have entered a guilty plea in exchange for a life
sentence. We evaluate a claim of ineffective assistance of counsel arising out of plea process under
the Strickland test. See Hill v. Lockhart, 474 U.S. 52, 57 (1985); Hernandez v. State, 726 S.W.2d
53, 56-57 (Tex. Crim. App. 1986). Under this test, a defendant must first show that his trial counsel
made such serious errors that the attorney was not functioning effectively as counsel and, second,
that he was prejudiced by this deficient performance. Strickland v. Washington, 466 U.S. 668, 687
(1984). The defendant has the burden of proving ineffective assistance of counsel by a
preponderance of the evidence and the reviewing court applies a strong presumption that counsel's
actions fell within the wide range of reasonable professional assistance. Valencia v. State, 946
S.W.2d 81, 83 (Tex. Crim. App. 1997). To demonstrate prejudice, the defendant must show there
is a reasonable probability that, but for counsel's errors, he would not have entered his plea and
would have insisted on proceeding to trial. Hill, 474 U.S. at 59; Ex parte Pool, 738 S.W.2d 285, 286
(Tex. Crim. App. 1987).

 Gomez first argues that his trial counsel was ineffective for failing to explain to him possible
defensive strategies, namely that he killed Hernandez in self-defense. See Booth v. State, 725
S.W.2d 521, 524-25 (Tex. App.--Tyler 1987, pet. ref'd) (trial counsel was ineffective in failing to
explain law relative to murder and manslaughter, allowing defendant to plead guilty to murder when
manslaughter defense was available to him under facts of case). We reject this contention.

 A person has the right to use deadly force in self-defense if a reasonable person would not
retreat and "he reasonably believes the deadly force is immediately necessary" to defend against
another's use of deadly force. Tex. Pen. Code Ann. § 9.32 (Vernon 1994). The reasonableness of
the defendant's belief that force was required to defend himself is viewed from the defendant's
standpoint at the time he acted. Tanguma v. State, 721 S.W.2d 408, 412 (Tex. App.--Corpus Christi
1986, pet. ref'd). Notably, Gomez cannot point out to this court any facts, which in his estimation,
support his bald assertion that his actions warranted the pursuit of such a defense. See Booth, 725
S.W.2d at 524-25 (defendant's heated argument with decedent prior to shooting raised issue of
sudden passion). That is because the facts of the instant case, even given a most generous
interpretation, fail to raise the affirmative defense. All eye-witness accounts indicate that when
brutally beaten and stabbed to death, Hernandez was unarmed and in the act of fleeing from Gomez
and his cohorts. Based on this record, we find that counsel's alleged failure to explain the law of self
defense to Gomez did not fall below the standard for professional assistance. See Valencia, 946
S.W.2d at 83.

 Gomez also contends that his trial counsel was ineffective for erroneously advising him about
the sentence in the plea agreement. In advancing this argument, Gomez points to the following
exchange which occurred at the sentencing hearing:

 The Court: Do you [addressing Gomez] remember that the agreement was to receive
a life sentence?


 The Defendant: Nope.(1)


 The Court: Mr. Sawyer?


 Mr. Sawyer: It is my understanding of the plea bargain, at that time, was that he was
facing a death penalty. After some negotiation with the district attorney's office he
entered a plea to a straight murder, reduced from capital murder.


 And as far as sentence to be imposed, I am not quite sure what it was at this time,
whether it was actually a life sentence or not. And since that time I have talked to
Jack McGinnis and tried to figure out exactly what the terms were, if there was any
benefit coming his way for his testimony.


 While this excerpt demonstrates that memories may fade, it does not demonstrate that
counsel inaccurately conveyed the terms of the plea agreement to Gomez and that based on such
alleged inaccurate information Gomez entered a guilty plea. The critical time to evaluate whether
the parties had a clear understanding of the agreement is not the sentencing hearing, but rather at the
plea hearing. The record demonstrates that at that time Gomez affirmatively stated that he read and
fully understood the terms of the plea agreement. Assuming, however, counsel had misled Gomez
into believing that the State was offering to reduce a capital murder charge to first degree murder
with a prison term of thirty years with eligibility for parole in fifteen years, the trial court cured such
alleged misunderstanding at the plea hearing when it inquired into the parole provision. Reading
from the plea agreement, the trial court asked the State to recheck Gomez's eligibility for parole in
thirty years. Moreover, as noted, the trial court asked Gomez if he signed the plea agreement,
whether he understood the terms of the agreement and his responsibilities under the agreement, and
whether he understood the punishment that would be assessed if the agreement was honored. Gomez
affirmatively answered each question. On this record, Gomez cannot show prejudice and, therefore,
he cannot prevail on a claim of ineffective assistance of counsel. See McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996), cert. denied, 117 S. Ct. 966 (1997) (failure to establish
sufficient prejudice defeats claim for ineffectiveness).

 Gomez next argues that the trial court erred in failing to conduct a hearing on his motion for
new trial wherein he asserted his claims of ineffective assistance of counsel. A trial court must hold
a requested hearing on a properly presented motion for new trial that raises matters that are not
determinable from the record. Bryant v. State, 974 S.W.2d 395, 400 (Tex. App.--San Antonio 1998,
pet. ref'd) (citing Jordan v. State, 883 S.W.2d 664, 665 (Tex. Crim. App. 1994)). Further, the
motion or supporting affidavit must show that reasonable grounds exist for granting a new trial.
Reyes v. State, 849 S.W.2d 812, 816 (Tex. Crim. App. 1993). Gomez asserts that he was entitled
to a hearing because neither his understanding of the plea agreement nor his account of his counsel's
erroneous explanation of the plea agreement were part of the record before the trial court. We
disagree. The trial court could have determined from the record that any confusion Gomez may have
had regarding the sentence of the plea agreement was dispelled during the plea hearing. As noted,
the trial court not only inquired about the parole provision at the plea hearing, but it also directly
asked Gomez whether he read and understood the plea bargain and whether he signed it. In short,
the trial court did not need to have an evidentiary hearing to determine that Gomez's motion was
without merit. See Bryant, 974 S.W.2d at 400 (where trial court properly admonished defendant,
trial court was not required to conduct hearing to develop claim that trial counsel was ineffective for
failing to fully explain plea bargain). Points of error one and two are overruled.

Admonishments


 Gomez next contends his plea was involuntary because the trial court failed to properly
admonish him regarding the consequences of his plea as required under article 26.13 of the Texas
Code of Criminal Procedure. Specifically, Gomez complains the trial court erred in failing to orally
admonish him.

 Before accepting a defendant's guilty plea, a trial court must admonish the defendant of the
punishment range, that the sentencing recommendation is not binding on the trial court, of the
limited right to appeal, and of the possibility of deportation. Tex. Code Crim. Proc. Ann. art.
26.13(a) (Vernon 1989). These admonitions may be made orally or in writing. Tex. Code Crim.
Proc. Ann. art. 26.13(d) (Vernon 1989). If the trial court admonishes the defendant in writing, it
must receive a statement signed by the defendant and the defendant's attorney that he understands
the admonitions and is aware of the consequences of his plea. Id.

 This procedure was properly followed in the instant case. The trial court relied on written
admonishments which were signed by Gomez, his counsel, and the trial court. This document,
which the trial court reviewed with Gomez prior to accepting his plea, was tendered to the trial court
at the plea hearing; it is properly before this court in the clerk's record. See Tex. Code Crim. Proc.
Ann. art. 26.13(d) (Vernon 1989) (when the trial court admonishes the defendant in writing, it must
receive statement signed by defendant's attorney that defendant understands admonitions and is
aware of consequences of his plea). Gomez acknowledged both in writing and orally at the January
21, 1996 hearing that he had read and understood those admonishments. These measures taken by
the trial court satisfied the dictates of article 26.13. See e.g., Bryant, 974 S.W.2d at 398; Hancock
v. State, 955 S.W.2d 369, 371 (Tex. App.--San Antonio 1997, no pet.). Points of error three and
four are overruled.


 The judgment of the trial court is affirmed.


 Catherine Stone, Justice

DO NOT PUBLISH

1. In the discussion of his fourth point of error, Gomez contends that his plea was "invalid" because he
demonstrated he did not understand the plea bargain agreement at the sentencing hearing. Gomez's responses at the
sentencing hearing merely indicate that he did not remember the terms of his plea agreement which had been entered
into almost two years prior. That his memory failed him is not evidence that he did not knowingly and voluntarily enter
into an agreement which allowed him to escape prosecution for capital murder
subject to the death penalty.


Return to
4th Court of Appeals Opinions