In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00019-CR
______________________________


DAMON EARL LEWIS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 8th Judicial District Court
Hopkins County, Texas
Trial Court No. 0216856


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Carter


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Damon Earl Lewis appeals from his conviction by a jury for the offense of aggravated sexual
assault on a child and indecency with a child. Four cases were tried together. The jury assessed his
punishment at ninety-nine years' imprisonment for the aggravated sexual assault and twenty years'
imprisonment for the indecency with a child. The trial court sentenced Lewis consistent with the
jury's verdict, with the sentences to run concurrently. The cases have been appealed separately and
have been briefed together.
Â Â Â Â Â Â Â Â Â Â Â Â Because the briefs and arguments raised therein are identical in all four appeals, for the
reasons stated in Lewis v. State, No. 06-04-00016-CR, we likewise resolve the issues in this appeal
in favor of the State.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the judgment of the trial court.
Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â October 27, 2004
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â November 16, 2004

Do Not Publish



ld
have rendered Ramirez ineligible for judge-ordered initial community supervision. Id.

 The Corpus Christi court, however, never reached the issue concerning the trial judge's
authority to impose shock community supervision when Section 3g would have disallowed the trial
court from ordering initial community supervision. See id. at 358. Instead, the Corpus Christi court
concluded that the State lacked the authority to appeal the trial court's order granting shock
community supervision. Noting the State's limited right of appeal, it continued:

 The State must invoke one of the specific instances in which the Legislature has
granted it the right to appeal. See Tex. Code Crim. Proc. Ann. art. 44.01. The
State has not invoked a specific statute in this case; the only applicable ground is the
State's right to appeal "a sentence in a case on the ground that the sentence is illegal." 
Tex. Code Crim. Proc. Ann. art. 44.01(b). Therefore, the State may only appeal
this case if the trial court's order granting appellee shock community supervision is
an illegal sentence.


Id. at 357. It concluded, correctly, that community supervision is not a sentence or even part of a
sentence. Id. at 358 (quoting Ex parte Williams, 65 S.W.3d 656, 657 (Tex. Crim. App. 2001)). 
Therefore, it concluded, Article 44.01(b) did not authorize the State to appeal the trial court's order
granting the motion for shock community supervision. The Ramirez court concluded it was without
jurisdiction to hear the appeal and dismissed it for want of jurisdiction. 62 S.W.3d at 358.

 The Corpus Christi court again addressed the State's authority to appeal an order granting
shock community supervision in In re State ex rel. De Leon, 89 S.W.3d 195 (Tex. App.--Corpus
Christi 2002, orig. proceeding). The De Leon court acknowledged its previous holding in Ramirez,
but explained that the State only advanced the "illegal sentence" provision of Article 44.01(b) as a
basis for its authority to appeal. Again, at issue in De Leon was the substantive question before us:
whether the trial court can order shock community supervision to a defendant who would not be
eligible for initial judge-ordered community supervision because Section 3g limited the trial court's
authority to so grant. See id. at 196.

 Once again, the Corpus Christi court did not address this substantive question. See id. The
State had sought mandamus relief, requesting that the court direct the trial court to vacate its order
granting the motion for shock community supervision since the trial court did not have the authority
to order community supervision under the circumstances in De Leon. Id. at 195-96. The Corpus
Christi court concluded that the State could have appealed the order granting the defendant's motion
for shock community supervision under Article 44.01's provision relating to the arrest or
modification of a judgment. See id. at 196. Since the State had an adequate remedy at law, the court
denied mandamus relief. See id. at 197.

 The Beaumont court concluded that the State was authorized to appeal such an order in State
v. Dunbar, 269 S.W.3d 693 (Tex. App.--Beaumont 2008, pet. granted). (1) Citing and siding with the
Corpus Christi court's position in De Leon, the Beaumont court concluded the State had the right to
appeal a trial court's order granting a motion for shock community supervision: "Because a
community supervision order arrests or modifies a judgment, Article 44.01(a)(2) authorizes the State
to appeal a shock community supervision order." Id. at 695. We agree with the Beaumont court's
reading of Article 44.01(a)(2). 

 After reading Ramirez, De Leon, and Dunbar in conjunction with Article 44.01, we conclude
that the State possesses the right to appeal the trial court's order granting shock community
supervision in this case pursuant to Article 44.01(a)(2), relating to the arrest or modification of
judgment. Having determined that the State does have the ability to appeal and we, therefore, have
jurisdiction to review this order, we move to the next question: whether the State is correct in that
the trial court did not have the authority to grant shock community supervision when an affirmative
deadly weapon finding rendered Posey ineligible for judge-ordered initial community supervision. 
That is, if the trial court was without authority to grant Posey community supervision originally (in
light of the affirmative deadly weapon finding), was the trial court authorized to order shock
community supervision after it revoked the initial jury-recommended community supervision and
sentenced Posey to confinement? 

 B. Trial Court's Authority to Order Shock Community Supervision

 1. Applicable law

 Section 6 of Article 42.12 governs shock community supervision:

Continuing Court Jurisdiction in Felony Cases


 Sec. 6. (a) For the purposes of this section, the jurisdiction of a court in
which a sentence requiring imprisonment in the institutional division of the Texas
Department of Criminal Justice is imposed by the judge of the court shall continue
for 180 days from the date the execution of the sentence actually begins. Before the
expiration of 180 days from the date the execution of the sentence actually begins,
the judge of the court that imposed such sentence may on his own motion, on the
motion of the attorney representing the state, or on the written motion of the
defendant, suspend further execution of the sentence and place the defendant on
community supervision under the terms and conditions of this article, if in the
opinion of the judge the defendant would not benefit from further imprisonment and:


 (1) the defendant is otherwise eligible for community supervision 

 under this article; and


 (2) the defendant had never before been incarcerated in a penitentiary 

 serving a sentence for a felony.


 (b) When the defendant or the attorney representing the state files a
written motion requesting suspension by the judge of further execution of the
sentence and placement of the defendant on community supervision, and when
requested to do so by the judge, the clerk of the court shall request a copy of the
defendant's record while imprisoned from the institutional division of the Texas
Department of Criminal Justice or, if the defendant is confined in county jail, from
the sheriff. Upon receipt of such request, the institutional division of the Texas
Department of Criminal Justice or the sheriff shall forward to the judge, as soon as
possible, a full and complete copy of the defendant's record while imprisoned or
confined. When the defendant files a written motion requesting suspension of further
execution of the sentence and placement on community supervision, he shall
immediately deliver or cause to be delivered a true and correct copy of the motion to
the office of the attorney representing the state.


 (c) The judge may deny the motion without a hearing but may not grant
the motion without holding a hearing and providing the attorney representing the
state and the defendant the opportunity to present evidence on the motion.

Tex. Code Crim. Proc. Ann. art. 42.12, § 6 (Vernon Supp. 2009) (emphasis added).

 Section 3 of Article 42.12 gives fairly broad authority to the trial judge to order initial
community supervision. Some of the authority which Section 3 giveth to the trial judge, Section 3g
taketh away from the trial judge. The relevant limitation here is as follows:

 Limitation on Judge-Ordered Community Supervision


 Sec. 3g. (a) The provisions of Section 3 of this article do not apply:


 . . . .


 (2) to a defendant when it is shown that a deadly weapon as defined in
Section 1.07, Penal Code, was used or exhibited during the commission of a felony
offense or during immediate flight therefrom, and that the defendant used or
exhibited the deadly weapon or was a party to the offense and knew that a deadly
weapon would be used or exhibited. On an affirmative finding under this
subdivision, the trial court shall enter the finding in the judgment of the court. On
an affirmative finding that the deadly weapon was a firearm, the court shall enter that
finding in its judgment.


Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 3g (Vernon Supp. 2009). Sections 3 and 3g, then, are
read in conjunction to arrive at the undisputed conclusion that the trial court may not order initial
community supervision upon a felony conviction in which there was an affirmative deadly-weapon
finding. The question here is more specific: After jury-ordered community supervision is revoked,
may the trial court order shock community supervision in light of (or despite) an affirmative finding
that a deadly weapon was used in the commission of the offense?

 2. Plain meaning of the statute: "otherwise eligible . . . under this article"

 This case turns on the interpretation and application of the following phrase found in Article
42.12, Section 6(a)(1): "the defendant is otherwise eligible for community supervision under this
article." The Texas Government Code requires that the plain meaning of phrases within a statute be
our guide in interpreting a statutory provision: "Words and phrases shall be read in context and
construed according to the rules of grammar and common usage." See Tex. Gov't Code Ann.
Â§Â 311.011 (Vernon 2005). Courts must also presume that the Legislature intended that effect be
given to the entire statute. Tex. Gov't Code Ann. Â§ 311.021(2) (Vernon 2005); see Ex parte
Forward, 258 S.W.3d 151 (Tex. Crim. App. 2008); Ex parte Austin, 746 S.W.2d 226, 236 (Tex.
Crim. App. 1988) (Clinton, J., concurring). Posey points out that Article 42.12 encompasses all
kinds of community service; he then argues that if the Legislature would have intended that shock
community supervision not be available to him in this situation, it would have referred specifically
to eligibility under Sections 3 and 3g dealing specifically with judge-ordered initial community
supervision. Since it does not, he continues, reference to "under this article" should be read to mean
"if Posey is eligible for any kind of community supervision" under any part of Article 42.12. Posey
maintains that since he had been placed on community supervision originally, he was obviously
eligible for community supervision.

 Shock community supervision serves to "suspend further execution of the sentence," and
jurisdiction to grant shock community supervision continues for 180 days after the date the execution
of the sentence begins. Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 6(a) (emphasis added). These
two facets indicate that shock community supervision is a consideration for the trial court in the
period of time elapsing after a jury has been dismissed. They also suggest that eligibility for Section
6 (shock community supervision) does have a temporal consideration. That is, the individual must
be eligible for community supervision at that time. Further, Section 6 refers specifically to the
authority of "the judge of the court" to order shock community supervision, making it clear that only
the judge--not the jury--can order shock community supervision. Nothing in Article 42.12 would
suggest otherwise.

 With these contextual notes in mind, we read "otherwise eligible" in Section 6 as requiring
that a defendant must be "otherwise eligible" for judge-ordered community supervision at the time
community supervision is considered, bringing us back to Sections 3 and 3g, dealing with judge-ordered community supervision. Under Section 3g, Posey (having been previously found to have
committed an offense using a deadly weapon) is ineligible for judge-ordered community supervision. 
By referring to "this article," Section 6(a)(1) encompasses the entirety of Article 42.12, including the
authority and limitations in place with respect to judge-ordered community supervision.

 Posey also characterizes this as a matter of reinstating the jury-awarded community
supervision. An attempt to do so confuses the differing types of community supervision. All types
of community supervision within Article 42.12 are independent of one another in the sense that
although a defendant may be eligible under the statute for one form of community supervision, he
may be ineligible under another. See Hudson v. State, 772 S.W.2d 180, 181 (Tex. App.--Houston
[14th Dist.] 1989, pet. ref'd) (2) (citing State ex rel. Vance v. Hatten, 600 S.W.2d 828 (Tex. Crim. App.
1980) (orig. proceeding)). Article 42.12 does not specifically address reinstatement of jury-ordered
community supervision by a judge following revocation of that community supervision. Instead, its
provisions create different types of community supervision. At the outset, Posey was properly placed
on initial community supervision by the jury; the judge could not have done so because of the
existence of the affirmative finding of a deadly weapon. That initial community supervision,
however, was revoked in light of Posey's violations of the conditions of that jury-ordered community
supervision. Shock community supervision is an entirely different beast, contemplating that a
defendant spend some time in confinement, requiring certain findings by the trial court before it is
ordered, and involving certain procedures that must be followed to bring the matter before the trial
court. After revocation and sentencing, Posey was subject to the rules and limitations applicable to
shock community supervision, one of those limitations being that it can only be ordered by a judge.

 The plain language of Article 42.12, Section 6, read in conjunction with the rest of "this
article," supports the conclusion that the trial court lacked the authority to order shock community
supervision here, when Posey was otherwise ineligible for judge-ordered community supervision. 
This conclusion is also supported by caselaw.

 3. Cases concerning the trial court's authority to order shock community
supervision


 a. State ex rel. Vance v. Hatten

 We have reviewed Vance, 600 S.W.2d at 828. Aspects of Vance could be read to support
the conclusion that courts must maintain a definite distinction between the trial judge's authority to
grant initial community supervision and authority to grant shock community supervision. Id. at 830. 
The former version of Article 42.12 (in effect when Vance was decided) specifically prohibited
shock community supervision for a defendant convicted of criminal homicide, rape, or robbery. Id.
at 829. The result of having specific limitations on the authority to impose shock community
supervision had the odd effect of creating a situation in which a trial court could grant initial
community supervision, but could not grant shock community supervision. Id. at 830.

 Acknowledging that it might be better to allow the trial court to have the same authority with
respect to both initial community supervision and shock community supervision, the Texas Court
of Criminal Appeals ultimately rejected this reading in light of the plain meaning of the statute:

 Certainly, it may be argued that under the entire scheme of Article 42.12, supra, it is
desirable that the trial court have the authority to grant "shock community
supervision" in any case in which it had the authority to grant "initial" probation. 
However, this is not the language of the statute.

Id. So, under the former version of Article 42.12, the court read and maintained a distinction
between the trial court's authority to grant initial or "regular" community supervision and its
authority to grant shock community supervision. See id. However, the relevance of Vance's specific
holding to the instant case is minimal since Section 6 of the current Article 42.12 represents a
significant and notable change from the version in effect at the time that Vance was decided. Gone
are the specific limitations relating to the trial court's authority to grant shock community
supervision. In lieu of the former wording is the phrase "otherwise eligible . . . under this article." 
See Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 6(a)(1).

 Although the version of Article 42.12 studied in Vance was quite different than the current
version by including separate, independent limitations on shock community supervision, we may still
rely on Vance for more general propositions. One is the focus on the plain meaning of the statute:

 [T]he statute must be construed as it is written by the legislature; it cannot be added
to by courts; nor is it the duty of the courts to supply omissions in a law or to
question the wisdom thereof. The courts, having no legislative powers, may not
enlarge or alter the plain meaning of statutory language. Wording in statutes is to be
given its literal interpretation when that wording is clearly unambiguous.


Id. (citations omitted). Another important aspect of Vance is the notion that different types of
community supervision should be kept as distinct ideas. Of course, this position becomes something
of a balancing act because, under the current version of Article 42.12, eligibility for shock
community supervision makes reference to "otherwise eligible" under Article 42.12. We see how
the Texas Court of Criminal Appeals deals with this specific language in Austin, 746 S.W.2d 226.

 b. Ex parte Austin

 In Austin, the court granted habeas relief to a defendant after the State violated the plea
agreement. Id. at 229. Austin had pleaded guilty to attempted murder pursuant to a plea bargain
under which he was to be granted shock community supervision. See id. at 226-27. The agreement
was approved by the trial court. Id. at 227. However, the parties discovered after he entered his plea
that due to the affirmative finding in the judgment that Austin had used a deadly weapon in
commission of his offense, he was ineligible for shock community supervision. Id. at 229. Because
the State's part of the plea bargain could not therefore be performed, the Texas Court of Criminal
Appeals ordered the conviction set aside and remanded the cause for a new trial. Id. at 229-30.

 Noting that Article 42.12 underwent reorganization in 1985, the Texas Court of Criminal
Appeals was faced with interpretation of the "otherwise eligible" language, which remains in the
current version of Article 42.12. Id. at 228. Applying a legislative scheme similar to the current
version of Article 42.12, the court concluded as follows:

 [U]pon the entry of an affirmative finding of a deadly weapon in the judgment the
applicant was not eligible for "regular" probation by the trial court and the trial court
was without "power" to grant the same. If applicant was not eligible for "regular"
probation because of the affirmative finding, . . . then he was not eligible for shock
probation . . . because he could be granted shock probation only if he was "otherwise
eligible for probation under this article."

Id. at 229 (citations omitted). Austin, therefore, makes it clear that a defendant who, by application
of Section 3g, is ineligible for judge-ordered community supervision is not "otherwise eligible" for
shock community supervision. (3)

 c. State v. Dunbar

 Our sister court came to the same conclusion in Dunbar. Dunbar was originally placed on
deferred adjudication community supervision by the trial court. Dunbar, 269 S.W.3d at 694. The
State moved to adjudicate, and the trial court convicted Dunbar of indecency with a child by contact,
an offense under Section 21.11(a)(1) of the Texas Penal Code, an offense listed under Section 3g of
Article 42.12 which would render Dunbar ineligible for initial judge-ordered community supervision
(as the affirmative deadly weapon finding does in the instant case). Id. The trial court imposed a

sentence of four years, but later granted Dunbar's motion for shock community supervision. Id. at
695. 

 The Beaumont court concluded that the trial court lacked the authority under Section 6 to
order shock community supervision based on the limitations outlined in Section 3g:

 Here, the trial court's power to grant shock community supervision was not invoked
because as a matter of law Dunbar was not eligible for judge-ordered community
supervision after conviction and imposition of sentence for an offense under Section
21.11(a)(1) of the Penal Code. See Tex. Code Crim. Proc. Ann. art. 42.12, Â§
3g(a)(1)(C).


 Under the express terms of Article 42.12, Â§ 6(a), Dunbar was not eligible for
judge-ordered community supervision on February 14, 2008. Therefore, Article
42.12, Â§ 6(a) did not authorize the trial court to modify the judgment after it became
final. We hold that the trial court lacked the authority to suspend the execution of the
sentence and place Dunbar on shock community supervision.


Id. at 696.

 Again, we note that the Texas Court of Criminal Appeals has agreed to review Dunbar, but
its review is limited only to the waiver argument presented in that case. We also note some factual
distinctions between the instant case and Dunbar. Dunbar was first placed on deferred adjudication
community supervision; under deferred adjudication community service, he would not have yet been
found guilty of any offense. When Dunbar was convicted upon the State's motion to adjudicate, she
became ineligible for judge-ordered community supervision, either shock community supervision
or otherwise. See id. at 696. A jury never recommended any type of community supervision in
Dunbar, the only community supervision being judge-ordered. Nevertheless, Dunbar was properly
placed on deferred adjudication community supervision. The Beaumont court recognized that an
entirely different set of criteria was at work when a different type of community supervision is
considered. When those criteria set out in Section 6 came into play, she was ineligible for judge-ordered community supervision as a result of the nature of her conviction and the application of
Section 3g.

 So, even though some factual distinctions may be drawn, Dunbar's reasoning is instructive. 
Here, Posey was properly placed on community supervision by the jury. When that community
supervision was revoked and Posey was sentenced to imprisonment, different rules were in
operation: those of Section 6 relating to shock community supervision. The plain meaning of
Section 6 implies the application of Section 3g limitations on judge-ordered community supervision. 
The affirmative deadly-weapon finding rendered Posey ineligible for judge-ordered community
supervision. See Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 3g(a)(2).

 We find guidance in Austin and Dunbar to conclude that as a result of the affirmative deadly-weapon finding, the trial judge did not have the authority to grant Posey's motion for shock
community supervision. We sustain the State's point of error. Section 6 of Article 42.12 did not
authorize the trial court to modify the judgment after it became final; the trial court lacked the
authority to suspend further execution of the sentence by placing Posey on shock community
supervision. Having concluded that the trial court was not authorized to suspend the sentence, we
now continue to address issues concerning that sentence. More specifically, we must resolve a
conflict between the length of sentence orally pronounced and the differing length of sentence set
out in the written judgment. 

 C. Sentencing Issue

 At the hearing on the State's motion to revoke community supervision, it appears there
existed an impression that the offense for which Posey was convicted was a state-jail felony when,
in fact, the affirmative deadly-weapon finding raised the offense to a third-degree felony. See Tex.
Penal Code Ann. Â§ 12.35(c)(1) (Vernon Supp. 2009), Â§ 19.05(b) (Vernon 2003). So, although
some apparently believed the appropriate range of punishment was 180 days to two years, it was
actually two to ten years. See Tex. Penal Code Ann. Â§Â§ 12.34, 12.35 (Vernon Supp. 2009).

 1. Reporter's Record v. Clerk's Record

 After having found the State's allegations in its motion to revoke community supervision to
be true, the trial court orally pronounced a sentence of twenty-two months, expressly rejecting the
two-year sentence assessed by the jury. The original judgment of conviction indicates the correct
punishment range of two to ten years, however, and the jury was charged on that range of
punishment. The written judgment revoking community supervision likewise shows a two-year
sentence. There is an obvious conflict between the sentence the trial court orally pronounced and
the judgment it signed.

 As a general rule, when the oral pronouncement of sentence and the written judgment differ,
the oral pronouncement controls. Ex parte Huskins, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005);
see also Ex parte Thompson, 273 S.W.3d 177, 178 n.3 (Tex. Crim. App. 2008) (when oral
pronouncement of sentence and the written judgment vary, the oral pronouncement controls and
written judgment can be corrected via nunc pro tunc). A nunc pro tunc judgment is appropriate to
correct clerical errors in a judgment. A clerical error is one "in which no judicial reasoning
contributed to [its] entry, and for some reason [was] not entered of record at the proper time." State
v. Bates, 889 S.W.2d 306, 309 (Tex. Crim. App. 1994); State v. Dudley, 223 S.W.3d 717, 721-22
(Tex. App.--Tyler 2007, no pet.); see also Tex. R. App. P. 23.1, 23.2. Nunc pro tunc orders are not
appropriate to address "judicial errors," errors that are the product of judicial reasoning or
determination. (4) Bates, 889 S.W.2d at 309; Dudley, 223 S.W.3d at 722.

 2. Can the trial court do that?

 If the trial court revokes community supervision, it may impose the sentence assessed at the
punishment hearing or it may reduce the sentence that was suspended at the punishment hearing if
it determines that to do so would serve the best interests of society and the defendant. Tex. Code
Crim. Proc. Ann. art. 42.12, Â§ 23 (Vernon Supp. 2009). However, the trial court is not authorized,
in fact, is expressly directed not, to reduce the sentence below the minimum sentence available for
the original offense:

 If community supervision is revoked after a hearing under Section 21 of this article,
the judge may proceed to dispose of the case as if there had been no community
supervision, or if the judge determines that the best interests of society and the
defendant would be served by a shorter term of confinement, reduce the term of
confinement originally assessed to any term of confinement not less than the
minimum prescribed for the offense of which the defendant was convicted.


Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 23(a); see Clapper v. State, 562 S.W.2d 250, 252 (Tex.
Crim. App. [Panel Op.] 1978) (concluding that trial court exceeded its authority by attempting to
reduce appellant's punishment to a term less than the minimum prescribed for the offense and
reforming sentence to show the term of imprisonment at five years as originally imposed and
probated upon conviction). We reiterate that the original judgment of conviction in 2006 accurately
reflected the proper classification of the offense and the proper range of punishment of two to ten
years. Everything else in the clerk's record is consistent with this. It is only the trial court's oral
pronouncement upon revocation that deviates from the two-year sentence originally imposed by the
jury, a sentence which fits within the punishment range of the crime of which Posey was convicted. 
Since the twenty-two-month sentence that was orally pronounced fell below the minimum
punishment for the third-degree felony offense of which Posey was found guilty, the trial court was
not authorized to make such a reduction.

 3. Is this an appeal of the twenty-two-month sentence?

 Posey maintains that this issue should have been, but was not, raised in a separate appeal by
the State. We note that this issue, unlike the shock community supervision issue above, does relate
to an illegal sentence, and the State may have been authorized to appeal that sentence under Article
44.01(b). See Mizell v. State, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003) ("A sentence that is
outside the maximum or minimum range of punishment is unauthorized by law and therefore
illegal."). Posey points out that the oral pronouncement of the twenty-two-month sentence was made
on November 21, 2008, and the State is far outside the twenty-day window in which it could have
filed a notice of appeal with respect to the sentence. See Tex. Code Crim. Proc. Ann. art. 44.01(d). 
The Texas Court of Criminal Appeals declined to take a similar action in Mizell:

 Appellant therefore asks this Court to reimpose an illegal sentence--a sentence that
has no legal effect--because the State failed to file a notice of appeal. This we cannot
do. Appellant appealed his convictions and therefore the court of appeals had
jurisdiction over the two cases. A trial or appellate court which otherwise has
jurisdiction over a criminal conviction may always notice and correct an illegal
sentence.

 

119 S.W.3d at 806. As the Houston Fourteenth court explained, there is no authority that directs a
court to reform a legal written judgment to reflect an illegal oral pronouncement. See Tufele v. State,
130 S.W.3d 267, 274 (Tex. App.--Houston [14th Dist.] 2004, no pet.).

 4. Variance between the oral pronouncement and written judgment

 We arrive then at the facts that we have an oral pronouncement of an illegal sentence and a
written judgment that reflects a punishment within the appropriate range. Application of the general
rule would require that we direct the imposition of an illegal sentence, an act which the Texas Court
of Criminal Appeals has refused to do. See Mizell, 119 S.W.3d at 806. We have taken that same
stance and recognized this situation as one in which the general rule regarding oral pronouncement
and written judgment does not apply. We will not direct the imposition of an illegal sentence. This
is not an issue proper for reformation but is, instead, a matter of a variance between the oral
pronouncement and the written judgment. See Ribelin v. State, 1 S.W.3d 882, 885 (Tex. App.--Fort
Worth 1999, pet. ref'd). We must determine whether the error was harmful. See Tex. R. App. P.
44.2(b); Ribelin, 1 S.W.3d at 885. That is, we must determine whether the variance affected Posey's
substantial rights.

 Nothing in the record suggests that Posey pleaded true to the State's allegation based on an
agreement that the two-year sentence originally imposed would be reduced to twenty-two months;
his plea of true preceded the oral pronouncement by the trial judge. Further, the written judgment
is within the legal range of punishment and the two-year sentence is, in fact, the absolute minimum
term of imprisonment for a third-degree felony. Further, the Texas Code of Criminal Procedure
provides that "[t]he sentence served shall be based on the information contained in the judgment." 
Tex. Code Crim. Proc. Ann. art. 42.01, Â§ 1 (Vernon 2006). We conclude that the variance between
the unenforceable oral pronouncement and the written judgment did not affect Posey's substantial
rights.

III. CONCLUSION

 We conclude that the affirmative deadly-weapon finding rendered Posey not "otherwise
eligible for community supervision under [Article 42.12]." See Tex. Code Crim. Proc. Ann. art.
42.12, Â§ 6(a)(1). In light of the deadly-weapon finding, Section 3g(a)(2) would have prevented the
trial judge from ordering community supervision. Since Section 6(a)(1) refers to "this article," it
would encompass Section 3g(a)(2)'s limitation on judge-ordered community supervision. The trial
court, then, erred by concluding that Posey was "otherwise eligible" for community supervision
under Article 42.12 and, therefore, should not have ordered shock community supervision.

 As the written judgment stands, it reflects the proper sentence. To the extent that Posey
invites this Court to reform the written judgment to reflect the illegal orally-pronounced twenty-two-month sentence, we decline. The trial court was not authorized to reduce the sentence to a term that
fell below the applicable range of punishment. We cannot and will not endorse the unenforceable
oral pronouncement of an illegal sentence. We vacate the trial court's order granting shock
community supervision, reinstate the November 21, 2008, judgment revoking Posey's community
supervision and sentencing him to two years' confinement, and remand the case to the trial court with
specific instructions to carry out the two-year sentence reflected in the written judgment. 



 Bailey C. Moseley 

 Justice


Date Submitted: September 16, 2009

Date Decided: October 20, 2009


Publish
1. We note that on March 11, 2009, the Texas Court of Criminal Appeals granted a petition
on the following issue in Dunbar: "Did the Court of Appeals err in holding that the State did not
waive their right to appeal by not objecting to the trial court placing the petitioner on community
supervision at the time the court ordered shock community supervision?" State v. Dunbar,
No.Â PD-1713-08, 2009 Tex. Crim. App. LEXIS 361 (Tex. Crim. App. Mar. 11, 2009). The State is
in no danger here of having waived any error associated with ordering shock community supervision;
it made an extensive, cogent argument that the trial court could not grant shock community
supervision here and noted that it would be appealing the decision.
2. This fairly general proposition came up in a context different than the one at issue. Since,
the Hudson court concluded, a person adjudged guilty of an offense can, in theory, be ineligible for
"ordinary" judge-ordered community supervision, but could still be eligible for deferred adjudication
community supervision under Article 42.12, the trial court had not misinformed the defendant by
discussing possible eligibility for community supervision. 772 S.W.2d at 181.
3. Indeed, a number of state cases have cited Austin for the proposition that ineligiblity for
judge-ordered Â initial Â community Â supervision Â equals Â ineligibility Â for Â shock Â community
supervision. Heath Â Â v. Â Â State, Â Â 817 Â Â S.W.2d Â Â 335, Â Â 339 Â Â (Tex. Â Â Crim. Â Â App. Â Â 1991); Â Â Rudnick
v. Â Â State, Â Â No. 03-02-00767-CR, 2003 Tex. App. LEXIS 7392 (Tex. App.--Austin Aug. 29, 2003,
pet. ref'd) (mem. op., not designated for publication); Bryant v. State, 974 S.W.2d 395, 398 (Tex.
App.--San Antonio 1998, pet. ref'd). At least one federal court has also done so:


 [Section] 3g of article 42.12 prohibits the imposition of judge-ordered community
supervision based on the convicted offense. Austin was convicted of one of the
offenses--aggravated robbery--for which community supervision is prohibited. See
Tex. Code Crim. Proc. Ann. art. 42.12, Â§ 3g(a)(1)(F) (West 1998). Thus, in light
of his ineligibility for community supervision, [the defendant] was also ineligible for
"shock probation." See Ex parte Austin, 746 S.W.2d 226, 229 (Tex. Crim. App.
1988).


Austin Â v. Â Cockrell, Â No. Â 3:01-CV-2236-L, Â 2002 Â U.S. Â Dist. Â LEXIS Â 7558, Â at Â *10 Â n.7 Â (N.D. Tex.
Apr. 26, 2002).
4. For this reason, it is likely that Posey would not be entitled to such relief at any rate since
the error at issue appears to be more in the category of judicial error and, therefore, outside the
purview of a nunc pro tunc order. See Ex parte Rich, 194 S.W.3d 508, 512 (Tex. Crim. App. 2006)
("The error that occurred in Applicant's sentencing was more than a clerical mistake that can be
corrected by a nunc pro tunc motion and order because it resulted from judicial reasoning or
determination.).