**AFFIRM; and Opinion Filed January 27, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01123-CV

### IN THE INTEREST OF A.B., ET AL., CHILDREN

### On Appeal from the 305th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 13-197-X-305th

## MEMORANDUM OPINION
Before Justices Lang-Miers, Brown, and Schenck
Opinion by Justice Brown

In this accelerated appeal, Father appeals the trial court's order appointing the Dallas County Child Protective Services Unit of the Texas Department of Family and Protective Services (the department) permanent managing conservator of his son M.M. with permanent managing conservatorship to be transferred later to M.M.'s maternal grandparents.[1] In a single issue on appeal, Father contends he received ineffective assistance of counsel. For reasons that follow, we affirm the trial court's order.

M.M. was born in January of 2012. In February 2013, the department filed a petition seeking temporary and permanent managing conservatorship of M.M. and seeking to terminate Father's and Mother's parental rights to M.M. By the petition, the department also sought

---

[1] *See* TEX. R. JUD. ADMIN. 6.2(a) ("In an appeal of a . . . suit affecting the parent-child relationship filed by a governmental entity for managing conservatorship," courts of appeals should, "so far as reasonably possible, ensure that the appeal is brought to final disposition" within 180 days of date notice of appeal is filed). Father's notice of appeal was filed in the trial court on July 28, 2014. It was not filed with this Court until September 5, 2014. The appeal was abated for two weeks in October in order for the trial court to hold a hearing and appoint Father a new attorney. After that, there were problems getting the reporter's record. After reinstatement of the appeal, the reporter's record was due on November 3, with an extension later granted until November 24. The court reporter attempted to file the record on November 24 without a master index and later without the reporter's signature. The reporter's record was not filed with this Court until December 19, 2014.

temporary and permanent managing conservatorship of Mother's two other children by a different father, A.B. and C.B., and sought to terminate Mother's parental rights to those children, as well terminate their father's parental rights.

The following facts are taken from the affidavit of the department's caseworker filed along with the petition and from the testimony of the department's supervisor in the trial court. In February 2012, about a month after M.M. was born, the department received a referral alleging neglectful supervision of M.M. The specific concerns were drug use by both parents and domestic violence by Father against Mother. During an investigation on February 13, 2012, Mother tested positive for PCP, opiates, and marijuana. A safety plan was put in place prohibiting Mother from any unsupervised contact with M.M. M.M.'s paternal grandmother, A.C., cared for him initially. In June 2012, Mother and Father called the caseworker to allege that A.C. was using drugs and ask that M.M. be removed from her care. According to the affidavit, A.C. tested negative for drugs in August 2012, and it was determined that M.M. would remain in her care. In September 2012, the department's caseworker learned that Father had been incarcerated for a drug offense. Father is still in prison. M.M. was placed back with Mother in October 2012, after the safety plan was lifted. In December 2012, Father sent the caseworker a letter containing details about his mother A.C.'s drug use and stating that A.C. was not a suitable caregiver for M.M. Father stated he did not want M.M. to be with A.C. (Father later wrote to the trial court to state that he had written this letter of "out of anger" and had a change of heart.)

Also in December 2012, Mother tested positive for marijuana and cocaine, and the department informed her it would be moving forward with getting temporary custody of her children. At that time, M.M. and his half-siblings were placed with the siblings' paternal

grandparents. A short time later, at Mother's request, the three children were placed with Mother's father and stepmother, their maternal grandparents.

After the department filed its petition, A.C. — Father's mother and M.M's paternal grandmother — intervened in this suit seeking to be appointed sole managing conservator of M.M. In a temporary order dated July 23, 2013, the trial court appointed the department temporary managing conservator of M.M. and appointed the maternal grandparents temporary joint possessory conservators of M.M. and his half-brothers. The court ordered the department to conduct a home study of the maternal grandparents and of A.C.

A home assessment of A.C., filed with the court in September 2013, indicated A.C. had a prior criminal history. In 1995, she was charged with aggravated assault with a deadly weapon. A.C. told the caseworker these charges were dismissed, but no disposition was listed on the criminal history check. In 2005, A.C. was charged with possession of marijuana. According to A.C., the police found marijuana in her car when she went to visit her son in prison. She maintained the marijuana belonged to her son. The case was dismissed. The person who conducted the home assessment stated in the written report that A.C.'s criminal history did not appear to be a concern and also stated, "There are no concerns about [A.C.'s] ability to care for her grandson." However, after reviewing the home assessment, the department supervisor made a handwritten note on the report denying placement with A.C. "due to criminal history."

In March 2014, all parties, including Father, Mother, A.C., and their attorneys, entered into a mediated settlement agreement. The parties agreed that Father shall be adjudicated the legal father of M.M. They further agreed the department shall be appointed permanent managing conservator of M.M. and his half-siblings and agreed that all three children shall remain with their maternal grandparents and that permanent managing conservatorship shall be transferred to the maternal grandparents. The mediated settlement agreement also provided that Mother,

Father, and Father's mother A.C. shall be appointed joint possessory conservators of M.M. It was agreed that Father shall have supervised visitation with M.M. Further, A.C. shall have an overnight visitation with M.M. on the third Saturday of each month beginning at noon and ending at 4:30 p.m. on Sunday. The mediated settlement agreement expressly stated:

> **THIS AGREEMENT IS NOT SUBJECT TO REVOCATION:** This Agreement is signed by each party to the agreement and each party's attorney who is present at the time the agreement is signed. A party is entitled to judgment on this mediated settlement agreement notwithstanding Rule 11 of the Texas Rules of Civil Procedure or another Rule of Law.

At a prove-up hearing in June 2014, department supervisor Lana Aarons was the sole witness. Aarons testified that this case came to the department's attention when it received a report alleging neglectful supervision of M.M. All parties participated in the mediation that occurred on March 27. Father attended the mediation. At the mediation, it was agreed that the department would be appointed permanent managing conservator of M.M. and that M.M. and his siblings would remain with their maternal grandparents. The department would later transfer permanent managing conservatorship of the three children to the maternal grandparents.[2]

The State's attorney asked Aarons why M.M. was not placed with the intervenor, his paternal grandmother. Aarons indicated it was based on a letter from Father stating his mother was doing drugs. She also indicated intervenor did not pass a home study, but has "ceased with regard to what she was doing" and is now allowed more access to M.M. On cross-examination, Father's counsel asked if A.C. had failed a drug test. Aarons testified that she did not know, but knew there were allegations made by Father and Mother that A.C. used drugs. Aarons indicated that concern about A.C.'s drug use was part of the reason placement with her was denied.

---

[2] The maternal grandparents were planning to participate in the Fostering Connections Program to become verified and negotiate permanency care assistance payments. Even if the maternal grandparents did not get licensed under this program, the department was still going to transfer permanent managing conservatorship to them without obligation to financially assist them.

After Aarons's testimony, Father's counsel spoke to the court about a letter Father had written the court in May 2014, after the settlement agreement was reached, with two complaints about counsel. In the letter, which is part of the appellate record, Father complained that his attorney never informed him about what was going on in the court and lied to him about A.C.'s having failed a drug test, which was the reason he agreed to sign the settlement agreement. Father asked the court to "please reject my signature from any papers I signed" and asked for another chance to "fight for my son so my mother can get conservatorship." He also expressed his desire to fire his attorney and have another attorney appointed. Apparently, A.C. also wrote the court two similar letters, but they are not in the record. Counsel had not seen these letters prior to the prove-up hearing. Counsel refuted the allegation that he had not kept Father informed about the case, stating that Father was not being honest with the court. Counsel told the court he had driven three hours each way to visit Father in prison in October 2013 to discuss the case for an hour and a half. Counsel had also spoken with Father "on a number of occasions." Counsel stated that when Father was bench warranted to Dallas for the mediation, counsel explained to him in great detail everything that was going on. Counsel explained that Father's mother would not be considered for placement because of her drug use. Thereafter Father agreed and signed the mediated settlement agreement voluntarily. Counsel said, "[N]ow he wants to revoke it and blame everything on me. But the truth is, he was explained fully everything that was going on and he signed it voluntarily."

A.C.'s counsel and M.M.'s guardian ad litem also addressed the court. A.C.'s counsel had reviewed the two letters A.C. sent the court. A.C.'s counsel stated that his client was in agreement with the mediated settlement agreement and was happy with its terms. The guardian ad litem asked the court to affirm the parties' agreement, stating it was in the best interest of the

–5–

children.  M.M.'s overnight visits with the intervenor were going well.  The siblings were together, which is department policy.

At the conclusion of the hearing, the trial court stated that the mediated settlement agreement had not been revoked.  The trial court entered judgment in accordance with the mediated settlement agreement.  Counsel for Father timely filed a notice of appeal on Father's behalf and later filed a motion to withdraw with this Court, indicating that Father no longer wished to be represented by counsel and wanted to represent himself.  We abated the appeal and ordered the trial court to conduct a hearing to determine if Father wished to pursue an appeal and wished to be represented by counsel and to appoint new counsel if necessary.  At a hearing in October 2014, the trial court appointed another attorney for Father, and we reinstated the appeal.

In this appeal, Father contends he received ineffective assistance of counsel.  Specifically, he maintains counsel was deficient for failing to 1) request a placement hearing asking that M.M. be allowed to live with his paternal grandmother, 2) file a formal motion to rescind the mediated settlement agreement, and 3) preserve Father's appellate rights.  We conclude Father has failed to meet his burden to establish ineffective assistance of counsel.

In a suit filed by a governmental entity requesting termination of the parent-child relationship or the appointment of a conservator, an indigent person has a statutory right to counsel.  *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003); *see* TEX. FAM. CODE ANN. § 107.013(a)(1) (West 2014).  The supreme court has held that this statutory right necessarily includes the right to effective assistance of counsel.  *In re M.S.*, 115 S.W.3d at 544.  The appropriate standard for determining whether counsel is effective is the *Strickland* standard applied in criminal cases.  *Id.* at 544–45.  First, the appellant must show that counsel's performance was deficient.  *Id.* at 545. We must take into account all the circumstances surrounding the case and must focus primarily on whether counsel performed in a reasonably

effective manner. *In re M.S.*, 115 S.W.3d at 545. Counsel's performance falls below acceptable levels of performance when the representation is so grossly deficient as to render proceedings fundamentally unfair. *Id.* We must give great deference to counsel's performance, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable assistance. *Id.*

In addition to showing counsel's performance was deficient, the appellant must show that the deficient performance prejudiced the defense. *Id.* In other words, the appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 549; *In re L.C.W.*, 411 S.W.3d 116, 129 (Tex. App.—El Paso 2013, no pet.).

Because this case involves a mediated settlement agreement, we also review the law regarding such an agreement. A trial court may refer a suit affecting the parent-child relationship to mediation. TEX. FAM. CODE ANN. § 153.0071(c) (West 2014). In this context, a mediated settlement agreement is binding on the parties if it 1) provides in a prominently displayed statement that it is not subject to revocation, 2) is signed by each party to the agreement, and 3) is signed by the party's attorney, if any, who is present at the time the agreement is signed. TEX. FAM. CODE ANN. § 153.0071(d). If a mediated settlement meets these requirements, a party is entitled to judgment on the agreement notwithstanding rule 11 or another rule of law. *Id.* § 153.0071(e). There is a narrow exception involving victims of domestic violence not implicated here. *See* TEX. FAM. CODE ANN. § 153.0071 (e-1); *In re Lee*, 411 S.W.3d 445, 452 (Tex. 2013). The unilateral withdrawal of consent to a mediated settlement agreement in a suit affecting the parent-child relationship does not negate the enforceability of the agreement. *In re L.M.M.*, 247 S.W.3d 809, 812 (Tex. App.—Dallas 2008, pet. denied).

We turn to Father's complaint that counsel was deficient for failing to request a placement hearing asking that M.M. be allowed to live with A.C. We assume Father thinks such a hearing should have been requested prior to the parties' reaching the settlement agreement. To show counsel was deficient, Father relies on counsel's apparently mistaken impression that A.C. had failed a drug test. Presumably, if counsel had known A.C. had not failed a drug test, he would have requested a placement hearing.

Father cannot show deficient performance in this regard. First, there is nothing in the record to show why counsel did not request a placement hearing. A silent record does not support a claim of ineffective assistance. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). We note that Father did not initially want A.C. to be managing conservator of M.M. Further, although counsel may have been mistaken about A.C. failing a drug test,[3] the fact remains that after a home assessment of A.C., the department denied placement of M.M. with her. There was testimony at the prove-up hearing that part of the reason the department supervisor denied placement with A.C. was due to concern about her drug use. And the written home assessment stated that the department denied placement with A.C. due to her criminal history. Because the department determined M.M. should not be placed with A.C., we cannot conclude that Father's counsel was ineffective for failing to request a placement hearing seeking such a result. Also, Father cannot show a reasonable probability the result of the proceeding would have been different. There is nothing to indicate a request for placement with A.C. would have been successful. And the parties eventually reached a binding mediated settlement agreement. A.C.'s attorney represented at the prove-up hearing that A.C. agreed with the settlement agreement and was happy with its terms.

---

[3] Nothing in the record shows A.C. failed a drug test, and the caseworker's affidavit actually indicates A.C. passed a drug test in August 2012.

Next, we address Father's assertion that counsel was defective for failing to file a formal motion to rescind the mediated settlement agreement. Father contends his letters to the court indicate he believed counsel coerced him into signing the agreement by telling him that A.C. failed a drug test when she had not and telling him she would not be considered for managing conservatorship.[4] Some courts of appeals have held that a court is not required to enforce a mediated settlement agreement if it is procured by fraud, duress, or coercion or other dishonest means. *See, e.g., Morse v. Morse*, 349 S.W.3d 55, 56 (Tex. App.—El Paso 2010, no pet.).

At the prove-up hearing, counsel discussed with the court Father's letter seeking to withdraw his signature from the settlement agreement. Counsel told the trial court he had not received a copy of Father's letter to the court and had not seen it until that day. Counsel maintained Father was not being honest with the court when he said counsel did not make contact with him. Counsel said he explained the mediated settlement agreement to Father and said that A.C. was not being considered for managing conservatorship because of her drug use. Counsel told the court that he fully explained everything to Father and Father signed the mediated settlement agreement voluntarily.

We cannot conclude that counsel's performance was deficient for failing to formally request that the settlement agreement be rescinded. Counsel did not learn of Father's allegations that counsel coerced him into settling by lying about the failed drug test until the day of the prove-up hearing. Although counsel did not file a written motion to rescind, he presented to the court Father's argument about why his signature should be withdrawn. And, as discussed above, although counsel may have been mistaken about whether A.C. failed a drug test, counsel was

---

[4] Father made this argument in two letters to the trial court — one filed in May 2014, the month before the prove-up hearing, and one written shortly after the hearing.

correct in informing Father that the department would not consider A.C. for managing conservatorship.

Moreover, much like an allegation of ineffective assistance raised in a motion for new trial, the trial court knew at the prove-up hearing about the complaint Father now raises about being coerced by his attorney. Counsel informed the court about his conversation with Father prior to mediation and represented that Father had signed the agreement voluntarily. The court expressly stated that the agreement had not been revoked. Thus, the trial court resolved this argument against Father. We will not substitute our judgment for the trial court's. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by statute as stated in State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007).

In addition, even if we assume counsel's performance was deficient, Father cannot show a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. Father asserts counsel coerced him into signing the settlement agreement with the lie that A.C. had failed a drug test and would not be considered for managing conservatorship. But as it was true the department was not considering A.C. for managing conservatorship, Father cannot show a connection between the alleged lie and his decision to sign the agreement. The trial court found the agreement had not been revoked. Thus, if counsel had filed a formal motion to rescind, there is not a reasonable probability the court would have granted it on grounds on coercion. Father's unilateral withdrawal of consent to the mediated settlement agreement does not negate the enforceability of the agreement. *See In re L.M.M.*, 247 S.W.3d at 812.

Finally, we turn to Father's complaint that trial counsel failed to preserve Father's appellate rights. Father acknowledges that counsel filed a notice of appeal on his behalf, but asserts he should have also taken other actions. First, Father contends counsel should have

–10–

moved to withdraw earlier so new counsel could have filed a motion for new trial and obtained a hearing on the motion allowing Father to present his arguments. Father presumes that the trial court would have granted a new trial if such a motion had been filed. In the absence of proof of prejudice, we cannot hold that trial counsel's failure to file a motion for new trial was ineffective assistance of counsel. *See Bryant v. State*, 974 S.W.2d 395, 400 (Tex. App.—San Antonio 1998, pet. ref'd).

Father also refers to counsel's failure to request the reporter's record or designate items to be included in the clerk's record. A complete record has been filed in this case. Again, Father cannot show any harm. We conclude Father has failed to establish his trial counsel was ineffective. We resolve Father's sole issue against him.

We affirm the trial court's order.


/Ada Brown/
ADA BROWN
JUSTICE


141123F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

IN THE INTEREST OF A.B., ET AL., CHILDREN

No. 05-14-01123-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 13-197-X-305th.
Opinion delivered by Justice Brown. Justices Lang-Miers and Schenck participating.

In accordance with this Court's opinion of this date, the trial court's July 17, 2014 order is **AFFIRMED**.

Judgment entered this 27th day of January, 2015.